[Civ. No. 25396.   Second Dist., Div. Three.   Mar. 16, 1962.]

NICK W. PATAPOFF et al., Plaintiffs and Appellants, v. RELIABLE ESCROW SERVICE CORPORATION et al., Defendants and Respondents.

Shulman & Shulman and Adley M. Shulman for Plaintiffs and Appellants.

Barker & Miller and Edmund F. Barker for Defendants and Respondents.

SHINN, P. J.—Plaintiffs appeal from a judgment of nonsuit granted at the conclusion of the opening statement of their counsel.

The action is for damages for fraud against Reliable Escrow Service Corporation, O. W. Nelson, Helen Spilker, M. Spilker, E. L. Winn, Samuel D. Burgeson, Charles Uhrig and Land Title Insurance Company. All the defendants who were served with process filed answers, denying the charges of fraud and asserting special defenses. The material allegations of the complaint, as amended, were that plaintiffs owned a residential lot worth $4,000; defendants arranged for the construction of a home on the lot and represented that it would cost $11,000; in order to obtain a maximum loan it would have to be made to appear that the house would cost $13,450; the loan papers must show that amount as the cost; plaintiffs executed two trust deeds, one representing the amount of the first loan and a second trust deed for $2,450, being the difference between the actual cost and the fictitious cost of $13,450; defendants represented that the amount of the second note and trust deed would be returned to them upon completion of the transaction; plaintiffs did not understand that they were signing the second trust deed; the transaction occurred in October 1951 and plaintiffs did not learn of the existence of the trust deed until May 4, 1954; it was not placed of record until January 8, 1953; the trust deed was foreclosed without any notice to plaintiffs and they thereby lost title to their property. It was alleged that all the representations of defendants and all their promises were false and fraudulent and part of a design to cheat and defraud the plaintiffs of their property. Compensatory and punitive damages were claimed.

Demurrers having been sustained, plaintiffs filed an amended complaint which omitted the previous allegations of the representations as to the cost of the house and the reasons for the deposit of second trust deed money and the promises of defendants with respect to the same. Instead it was alleged that defendants "pretended" to assist plaintiffs in the erection of a home and in obtaining for plaintiffs the necessary financing; that they concealed the nature of the second trust deed, representing that it was just another document, and persuaded plaintiffs to sign it without reading it

or knowing that it was a trust deed. It was alleged that all the acts and representations of defendants were pursuant to a fraudulent conspiracy to deceive and cheat plaintiffs and that as a result of the same plaintiffs lost their home through foreclosure of the second trust deed, and were ousted through an action of unlawful detainer. Demurrers to the amended complaint were overruled.

When the case came on for trial a colloquy occurred between the court and plaintiffs' counsel, which occupies 46 pages of the reporter's transcript. All this discussion was pursuant to the court's directing plaintiffs' attorney to make an opening statement of what he proposed to prove, the announced reason given therefor being that if the ruling of the court should be adverse to plaintiffs it could be presented for review on appeal by means of a brief and inexpensive record, rather than an extensive record that would be required if the case should be tried on the merits and a judgment rendered adverse to plaintiffs.

Plaintiffs' attorney made a statement of what he proposed to prove: defendants represented that a house would be built for plaintiffs at a cost of $11,000; plaintiffs had but $2,000; it would be necessary to borrow $9,000 on a first trust deed, and the documents, on the basis of which the loan would be obtained, would have to show that $3,126.50 was being borrowed on a second trust deed for use in the construction of the building; a $9,000 loan was obtained and plaintiffs paid in $2,000; defendants agreed to place in an escrow $3,126.50; they represented that none of that money would be used in the construction of the house, but would remain subject to withdrawal, and would be withdrawn by the defendants after the house was completed; plaintiffs signed a promissory note for the amount, and although they executed a second trust deed in the amount of the note, they were told it was merely a necessary paper in the escrow and they did not know that the document was a trust deed; for some unknown reason the escrow arrangements failed except as to the $9,000 loan; after the house was constructed plaintiffs occupied it and made payments on the first trust deed, having no knowledge that they had signed a second trust deed, which had not been placed of record until January 8, 1953; at the trustee's sale, which occurred prior to May 4, 1954, the property was sold to defendant Nelson and plaintiffs were ousted from possession; Nelson made improvements at a cost of $500 and sold the property for $21,000.

Plaintiffs' attorney also offered to prove that the described representations and actions of the defendants were in pursuance of a conspiracy to defraud plaintiffs of their property; and also that plaintiffs were unable to pay the amount of the second trust deed in order to avoid a foreclosure.

Proof of the facts stated by plaintiffs' attorney would have been sufficient to entitle them to some relief. It clearly appears that in the discussion between the court and plaintiffs' counsel the court lost sight of the fact that plaintiffs proposed to prove that the note for $3,126.50 represented a fictitious indebtedness, was executed for a particular purpose, no consideration was received for it and that defendants promised the amount of it would be returned to them from the escrow as surplus money after the house was built. The court, assuming that the note represented a genuine indebtedness, was of the opinion that plaintiffs have no cause of action even though the trust deed securing the note was fraudulently obtained. Plaintiffs correctly say in their brief "It was the apparent position of the Court that the procuring of a security for a justly owing debt could not produce damages to Appellants, regardless of the fraud involved in such procurement, or the subsequent extent of loss by the debtor." The assumption that plaintiffs were indebted on the note was the exact opposite of what they alleged in the complaint and contrary to what they proposed to prove.

Defendants made a motion for summary judgment upon an affidavit asserting that an action of unlawful detainer brought by Nelson against plaintiffs, after he acquired title under the trust deed sale, was decided in his favor and he was given judgment for possession. Defendants now contend that the judgment is res judicata of the issues presented in the present action, and that even though the court was in error in dismissing plaintiffs' action, the judgment should not be reversed, since their action, in any event, is barred by the judgment restoring possession of the property to Nelson.

The question of title was not triable in the unlawful detainer action, but only the question of the right of possession. (*Cheney* v. *Trauzettel*, 9 Cal.2d 158 [69 P.2d 832].) Moreover, the present action is not to try title but for damages.

The complaint was far from a model pleading, but its sufficiency was not questioned in the hearing by motion for judgment on the pleadings, by motion to exclude evidence of any

of the facts proposed to be proved, or otherwise. At the conclusion of the arguments defendants' counsel said: "We therefore respectfully urge that the defendants are entitled to a nonsuit based upon the opening statement of the plaintiff."

In their answer and supplemental answer, and in a counterclaim of defendant Nelson, it was alleged that Nelson had obtained and holds certain judgments for money against plaintiffs, one of which was obtained in April 1953. These were not pleaded as a bar to the present action or by way of estoppel; they were not called to the attention of the court or considered on the motion.

The judgment is reversed.

Ford, J., and Files, J., concurred.

A petition for a rehearing was denied April 11, 1962, and respondents' petition for a hearing by the Supreme Court was denied May 9, 1962.