[Civ. No. 42065. Second Dist., Div. Four. Mar. 18, 1974.]

JOSEPH GONZALES, Plaintiff and Respondent, v.
GEM PROPERTIES, INC., et al., Defendants and Appellants.

## COUNSEL

Levinson, Marcus & Bratter, Burton S. Levinson, Lawrence R. Lieberman, Fields, Fehn & Feinstein and N. Mitchell Feinstein for Defendants and Appellants.

Ron Sievers, Terry J. Hatter, Jr., and Peter L. Wallin for Plaintiff and Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—Plaintiff Joseph Gonzales filed an amended complaint seeking to cancel a trustee's deed and redeem property sold at a trustee's sale. He also sought punitive damages from the defendants, Gem Properties, Inc., and Max D. Kessler. After a trial by the court, judgment was entered for the plaintiff; the trustee's sale was declared void and the deed of the trustee invalid. Defendants were assessed $5,000 in punitive damages. They have appealed the judgment.

The case is before us on a partial clerk's transcript which includes the judgment roll (rules 5, 52, Cal. Rules of Court; Code Civ. Proc., § 670).[1] Thus, the sufficiency of the evidence to support the trial court's findings of fact is not in issue. (Part I, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 240, p. 4233; 5 Cal.Jur.3d, Appellate Review, § 496, p. 149.)

The court's findings disclose that, in 1962, plaintiff Gonzales was the owner of a residence in Lakewood. On December 28, 1962, Gonzales had borrowed $3,100, executing a promissory note and second deed on the property. The loan was payable in monthly installments to the Aames Mortgage Company, which was acting as collection agent.

Plaintiff made payments into 1967, at which time the principal balance had been reduced to $691.88. Early in that year, a dispute arose between plaintiff and Aames concerning payments on the note, the details of which are not clear; Aames "refused plaintiff's tender of payments and instituted foreclosure proceedings . . . on April 20, 1967, by recording a Notice of Default and election to sell" the property. Plaintiff received notice of this on May 17, 1967. The findings show he was told that he had 90 days from the receipt of the notice to pay up arrearages on the loan. He thought he had until mid-August to take care of this matter.

---

[1]The record discloses that defendant Gem Properties, Inc. requested the preparation of a reporter's transcript, but this request was later withdrawn.

On June 29, 1967, defendant Gem Properties, Inc., purchased plaintiff's delinquent note and the second trust deed. Gem Properties, Inc. was wholly owned by the Kesslers, George, Edna and their son, Max D. Kessler. It was a corporation partly engaged in the business of purchasing obligations in default which were secured by real property and obtaining title to the real property by holding a trustee's sale at which the corporation is the successful bidder. Plaintiff had no immediate knowledge that Gem had acquired his obligation. After purchasing it, Gem Properties substituted Max D. Kessler in place of the named trustee on the second trust deed.

When plaintiff discovered the transfer and the identity of the defendants before the trustee's sale he attempted to make tender of the money owed. The defendants evaded him. The defendants attempted to discourage competitive bidding at the sale. The defendants were widely known in their trade as persons willing to employ tricks and devices to acquire property for amounts below its actual value.

On August 11, 1967, Max D. Kessler, acting as trustee, sold plaintiff's property to Gem Properties, Inc. for $691.88, plus the costs of foreclosure. He then executed a trustee's deed of sale in favor of Gem. The sale price was greatly disproportionate to the value of the property.

The clerk's record shows that, on August 31, 1967, Gem Properties filed an action for unlawful detainer against Gonzales in Los Cerritos Municipal Court in order to obtain possession. (See Code Civ. Proc., § 89.) Plaintiff herein obtained counsel and filed an answer and a cross-complaint in the unlawful detainer proceeding, alleging that plaintiff's default on the note had been waived by Gem Properties' predecessor in interest and that plaintiff had not received notice of the sale. Plaintiff herein also filed a complaint in the superior court seeking to invalidate the trustee's sale.

The unlawful detainer action was tried in the municipal court on November 7, 1967. Plaintiff herein asserts in his respondent's brief that the municipal court judge refused to transfer the case to the superior court, struck his cross-complaint and then proceeded to take some evidence concerning the circumstances of the sale; the record before us does not establish what actually occurred because it does not include a transcript of the municipal court proceedings.[2] The municipal court entered judgment for Gem Properties, Inc. in January 1968. Detailed findings of fact and conclusions of law were made by the municipal court which appear to have

[2]The same claim was made in written materials submitted to the superior court by plaintiff. Defendants concede only that the cross-complaint of plaintiff was stricken as it prayed for affirmative relief, but contends that the court actually heard substantial evidence on all pertinent issues raised by plaintiff's defenses.

covered issues not raised by the defensive pleading in the action. The municipal court declared that the sale had been regular and proper, that the trustee's deed was valid, and that Gonzales' claims of waiver (of payments on the note) and valid tender were untrue.

An appeal was taken from that judgment to the appellate department of the superior court, and the judgment was affirmed without written opinion. Plaintiff was dispossessed of the property in August 1968 (and has remained out of possession since that date).

After trial in the superior court on an amended complaint, which sought redemption of the property, together with punitive damages on the ground that defendants had fraudulently conspired to deprive plaintiff of his property interest, the superior court made findings of fact and conclusions of law which differed substantially from those previously made in the municipal court. It found that the defendants here had acted "collusively, deliberately and oppressively" to obtain plaintiff's property at a minimal price for their own gain. It concluded that the defendants' conduct was fraudulent, deliberate, reckless and malicious.

 Defendants contend on this appeal, as they did in the trial court, that the doctrine of res judicata should have been applied to bar plaintiff's suit for equitable relief in the superior court, as the matter had already been litigated in the unlawful detainer proceedings in the municipal court.

 A general statement of the doctrine of res judicata is "that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." (46 Am.Jur.2d, Judgments, § 394, p. 558.) Thus, when applied, it does bar a second action between the same parties on the same subject matter involved in the prior action. (46 Am.Jur.2d, Judgments, § 407, p. 575.) The doctrine (in civil cases) "rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." (*In re Crow,* 4 Cal.3d 613, 622 [94 Cal.Rptr. 254, 483 P.2d 1206].)

 The crucial issue in the case before us is whether plaintiff did have a "fair adversary hearing" in the municipal court, one that resulted in a judgment on the merits of his case, precluding his subsequent suit.

A brief discussion of the history and purpose of the action of unlawful detainer is necessary. (Code Civ. Proc., § 1159-1179a.) Prior to 1929, it

constituted a summary method, created by statute, for litigating the right to possession of real property between landlords and tenants. Title to property was not in issue. (*Francis* v. *West Virginia Oil Co.,* 174 Cal. 168 [162 P. 394].) It is still the rule that, generally, neither cross-complaints nor counterclaims raising any issue extrinsic to the right of immediate possession are allowed in unlawful detainer proceedings, as their introduction would defeat the basic statutory purpose of unlawful detainer, i.e., a speedy determination of the right to possession, as distinguished from broader issues of title. (*Knowles* v. *Robinson,* 60 Cal.2d 620 [36 Cal.Rptr. 33, 387 P.2d 833].)

The United States Supreme Court has recently considered the constitutionality of the Oregon unlawful detainer statute which provides a summary method, similar to that of California, for determining the right to possession of real property. The court held that Oregon could constitutionally enact and apply legislation which segregated an action for possession of real property from the issue of title. (*Lindsey* v. *Normet* (1972) 405 U.S. 56 [31 L.Ed.2d 36, 92 S.Ct. 862].) One basic assumption made by the court in arriving at the result is pertinent to our discussion here: the assumption that other remedies would remain available to defendants in unlawful detainer actions to obtain affirmative relief if such were warranted, with respect to rights involving the same property. (See *Lindsey,* 405 U.S. p. 66 [31 L.Ed.2d p. 46].)

In 1929, the California Legislature added Code of Civil Procedure section 1161a to its unlawful detainer statutes (added Stats. 1929, ch. 393, § 1), providing that the summary procedures would henceforth be available not only to landlords but to persons who had obtained title to real property under certain specifically enumerated circumstances, including, inter alia, "3. Where the property has been duly sold in accordance with section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by him, or a person under whom he claims, and the title under the sale has been duly perfected."[3]

The extent to which this addition to the code required the court hearing the unlawful detainer action to inquire into the title of the plaintiff seeking possession pursuant to section 1161a was considered by the California Supreme Court in 1937, in *Cheney* v. *Trauzettel,* 9 Cal.2d 158 [69 P.2d 832]. The court stated: "The trial court properly held that in the summary

---

[3]Civil Code section 2924 sets forth the notices required concerning default, intention to sell, and actual sale of property which secures performance of an obligation in default. Section 2924b provides a procedure for receiving special notice of default. Section 2924c concerns cure of default.

proceeding in unlawful detainer the right to possession alone was involved, and the broad question of title could not be raised and litigated by cross-complaint or affirmative defense. [Citations.] It is true that where the purchaser at a trustee's sale proceeds under section 1161a of the Code of Civil Procedure he must prove his acquisition of title by purchase at the sale; but it is only to this limited extent, as provided by the statute, that the title may be litigated in such a proceeding. [Citations.] . . . Irrespective of the merits of the defenses raised by the [defendant's] answer, the alleged equitable grounds of attack on plaintiff's title have no place in the present summary proceeding, for if such issues are permissible, the proceeding entirely loses its summary character. In our opinion the plaintiff need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title. Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession nor are they concluded by the judgment." The holding in *Cheney* was recently followed in *MCA, Inc.* v. *Universal Diversified Enterprises Corp.,* 27 Cal.App.3d 170, 176 [103 Cal.Rptr. 522].

Since *Cheney,* the cases have held that, in an unlawful detainer proceeding, the court must make a limited inquiry into the basis of the plaintiff's title when acquired through proceedings described in Code of Civil Procedure section 1161a. (*Abrahamer* v. *Parks,* 141 Cal.App.2d 82 [296 P.2d 341]; *Kartheiser* v. *Superior Court,* 174 Cal.App.2d 617 [345 P.2d 135].) Some of the cases have determined that a municipal trial court has a duty to hear equitable defenses offered by the defendant. (*Altman* v. *McCollum,* 107 Cal.App.2d Supp. 847 [236 P.2d 914]; *Kessler* v. *Bridge,* 161 Cal.App.2d Supp. 837 [327 P.2d 241].) Pendency of another action concerning title has been held immaterial insofar as it might affect the unlawful detainer proceeding. (*Cruce* v. *Stein,* 146 Cal.App.2d 688 [304 P.2d 118].) The doctrine of res judicata has been applied by some courts to a subsequent action when it appeared that the defendant in the unlawful detainer suit had opportunity to litigate, or actually had litigated, in full his claim to title. (*Seidell* v. *Anglo-California Trust Co.,* 55 Cal.App.2d 913 [132 P.2d 12]; *Bliss* v. *Security-First Nat. Bank,* 81 Cal.App.2d 50 [183 P.2d 312]; *Freeze* v. *Salot,* 122 Cal.App.2d 561 [266 P.2d 140]. See also *High* v. *Cavanaugh,* 205 Cal.App.2d 495 [23 Cal.Rptr. 121].)

More recent cases have tended to emphasize that the unlawful detainer defendant's affirmative equitable action is not barred by res judicata in a subsequent suit. It was stated in *Byrne* v. *Baker,* 221 Cal.App.2d 1, 7 [34 Cal.Rptr. 178], in affirming plaintiff's judgment in unlawful detainer,

that "Any claims of title that appellant [defendant] may have may be determined in the quiet title action now pending." And, in *Patapoff* v. *Reliable Escrow Service Corp.,* 201 Cal.App.2d 484 [19 Cal.Rptr. 886], res judicata was not applied to bar a subsequent suit for damages, based upon fraud. Specific performance of a contract of sale was litigated in a subsequent suit in *Haase* v. *Lamia,* 229 Cal.App.2d 654 [40 Cal.Rptr. 518], and found not barred by an earlier favorable determination in the municipal court in favor of the then defendant.

Thus, it appears that the problem of determining at what point the unlawful detainer proceeding has provided the means of litigating equitable attacks by the defendant therein on plaintiff's title has been resolved with varying results.

As indicated previously, the critical question is whether or not the unlawful detainer defendant has had adequate opportunity to present his case. The summary nature of unlawful detainer proceedings suggests that, as a practical matter, the likelihood of the defendant's being prepared to litigate the factual issues involved in a fraudulent scheme to deprive him of his property, no matter how diligent defendant is, is not great. Fraudulent transactions are not ordinarily conducted openly; frequently they are bared only by investigation and discovery procedures. Investigation and discovery are not always available to a defendant who must face the time element of unlawful detainer proceedings provided in Code of Civil Procedures sections 1167, 1179a.

We believe that the Legislature did not intend, by the passage of section 1161a, to require a defendant to litigate the elements of an action for affirmative equitable relief in such summary proceedings or to be forever barred from suit. While the issue of immediate possession is within the province of the unlawful detainer court, as well as the requirement, where applicable, placed upon the plaintiff to assert technical compliance with Civil Code section 2924, the issue of title obtained by fraud, which includes but extends beyond the holding of a trustee's sale, remains open for further litigation.

In the case before us, the record does not establish that plaintiff received a full adversary hearing on all the issues involved in his subsequent suit, such as the trustee's practice of discouraging competitive bidding at a foreclosure sale in order to help obtain the property for the corporation, in which he had an interest. It does not appear that the unlawful detainer court, in the exercise of its limited power to inquire, properly could have received and considered evidence of the fraud. We conclude that the sub-

sequent suit was not barred by the doctrine of res judicata. (See *Patapoff, supra.*)

The judgment, made in the instant action by the trial court, merely recites that the proceedings held to acquire title were void; no disposition of plaintiff's request for redemption of the property was ordered. If the defendants have sold the residence to a bona fide purchaser for value, it obviously was not within the court's power to order return of the property to the plaintiff. (*Strutt* v. *Ontario Sav. & Loan Assn.,* 11 Cal.App.3d 547 [90 Cal.Rptr. 69].) It is, however, within the equitable power of the court to award compensatory damages to the plaintiff which will render him as whole as possible at this point in time if the property cannot be returned. (18 Cal.Jur.2d, Equity, § 16, p. 154.) Since we have determined that compensation can be awarded if the property cannot be returned, we remand the judgment for the trial court's consideration of compensation to be awarded. It is thus unnecessary for us to consider at this time defendant Kessler's contention that punitive damages were improperly assessed against him in the absence of a compensatory damage award.

The judgment is affirmed insofar as it declares the trustee's sale to be void and the trustee's deed to be invalid; it is reversed insofar as it fails to award to plaintiff either a return of the property or compensation for its loss. The case is remanded to the trial court for the sole purpose of modifying its judgment so as to grant such relief as may be proper and of taking testimony, if necessary, on such matters. Respondent shall recover costs on appeal.

Kingsley, J., and Dunn, J., concurred.

A petition for a rehearing was denied April 2, 1974, and the petition of appellant Gem Properties, Inc., for a hearing by the Supreme Court was denied May 16, 1974.