Filed 1/23/14  Huynh v. Le CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SONNY VAN HUYNH et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DANNY THIEN LE et al., <br><br> Defendants and Respondents. | H038238 <br> (Santa Clara County <br> Super. Ct. No. CV196883) |

## I.  INTRODUCTION

Appellants Sonny Van Huynh and Lai T. Huynh Tran (hereafter, sometimes collectively the Huynhs) purchased a convenience store business from respondent Danny Thien Le dba D.L. Investment, Inc. (Danny Le) and elected to lease the business premises.  Several years later, respondent Linda Le, the property owner, filed an unlawful detainer action against the Huynhs in which she alleged that they had violated the lease agreement.  The judgment in the unlawful detainer action awarded Linda Le possession of the premises and holdover damages and costs.

The Huynhs subsequently filed the instant civil action against defendants Danny Le and Linda Le alleging that defendants were liable for contract and tort damages because the unlawful detainer action was based on a lease agreement on which the Huynhs's signatures were forged.  Defendants brought a motion for judgment on the pleadings, arguing that the action was barred under the doctrine of collateral estoppel

because the forgery issue had been litigated in the unlawful detainer action. The trial court granted the motion and entered judgment in defendants' favor.

On appeal, the Huynhs contend that the doctrine of collateral estoppel does not apply because they did not have a full and fair opportunity to litigate the issues of fraud, forgery, and breach of contract in the unlawful detainer action. For the reasons stated below, we find no merit in their contentions and we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Unlawful Detainer Action*

#### 1. The Pleadings

In November 2008, Linda Le filed an unlawful detainer action against the Huynhs in which she asserted that she was the owner of the premises located at 1684 South Seventh Street in San Jose that the Huynhs had agreed to lease on March 1, 2004. (*Le v. Huynh* (Super. Ct. Santa Clara County, 2008, No. 127446).) The unlawful detainer complaint[1] stated that she had served a three-day notice to quit and sought possession of the property, forfeiture of the lease agreement, and costs on the grounds that the Huynhs had "made physical modification to property & are operating an auto repair shop in violation of the lease and without permission of the landlord."

The lease agreement attached as Exhibit 1 to the unlawful detainer complaint was dated October 6, 2003, and stated that the lease period for the business, land, and building at 1684 South Seventh Street, San Jose was March 2004 to March 2013 with a monthly rent of $3,000 and an optional five-year extension with rent according to market rates. Among other things, the lease agreement required the Huynhs to "use this business as Retail store, Mini market only" and to pay all taxes related to the property.

---

[1] This court granted appellants' request to take judicial notice of the complaint—unlawful detainer filed on November 12, 2008 in *Le v. Huynh*, *supra*, No. 127446.

The Huynhs's answer to the unlawful detainer complaint asserted the following affirmative defenses: (1) "Defendants have initiated legal proceedings against Plaintiff and/or her relatives and agents"; (2) "Fraud-The purported lease was not properly executed"; (3) "Unclean Hands-Prior breach of contract by Plaintiff and/or her partners and agents"; and (4) "Plaintiff . . . filed the complaint to retaliate against defendant."

## 2. The Court Trial and Judgment

A court trial was held in the unlawful detainer action on December 10, 2008. Linda Le testified that it was her intention that the Huynhs use the leased premises only as a retail store, and she had not been aware that they were operating an auto repair shop on the premises. She had served the Huynhs with a three-day notice to quit. Luu Le, the father of Linda Le, testified that he had previously served three notices to correct the problem and had taken recent photographs of the auto repair shop (also described as a "smog kit shop"). Luu Le also testified that when he handed the third notice to correct the problem to Sonny Huynh, his response was "I don't care."

Sonny Huynh testified that "[a]t the beginning" he received a lease telling him to pay $3,000 per month for 10 years with a three percent increase for the next five years. He believed that his lease agreement was with Danny Le, to whom he paid rent. The auto repair shop was not present at the beginning of the lease period and is currently being rented by a friend. He did not know that he needed permission to rent out the location for an auto repair shop because the lease agreement did not say anything about the use of the premises.

Sonny Huynh further testified that the lease agreement dated October 6, 2003, that was attached to the unlawful detainer complaint did not contain the signature of either himself or his wife, Lai T. Huynh Tran, as shown in the following direct examination:

"[DEFENSE COUNSEL]: Mr. Huynh, I'm going to show you Plaintiff's Exhibit 1, real property lease agreement. It says San Jose, October 6, 2003. [¶] Directing your

attention to page 2, the signature page. Can you review that, please? Does that page contain your signature?

"[SONNY HUYNH]: No.

"[DEFENSE COUNSEL]: . . . Does it contain the signature of your wife?

"[SONNY HUYNH]: No. It's not her signature."

On cross-examination, Sonny Huynh testified as follows regarding his signature on the lease agreement dated October 6, 2003:

"[PLAINTIFF'S COUNSEL]: You testified earlier this is not your signature, correct?

"[SONNY HUYNH]: Right.

"[PLAINTIFF'S COUNSEL]: Is it your theory that someone forged your signature on this lease?

"[SONNY HUYNH]: I don't know. It was sent to me. [¶] . . . [¶] I just receive[d] it recently."

At the conclusion of the court trial, the court ruled as follows: "Number one, I do not believe the Defendant [Sonny Huynh] that there is another lease agreement. [¶] Number two, I do not believe the Defendant when he says that that's not his signature. I'm looking at his original signature on his answer and . . . I'm not an expert, but they are the same.[2] Okay. [¶] That lease agreement provides for the operation of a mini market only. . . . I really don't believe also that this business isn't his; that even if I would believe him, he's in effect subleased out a portion without obtaining the prior approval of the landlord. A further violation. [¶] What I tend to believe is what [Luu Le] said that

---

**2** Although the Huynhs do not raise the issue, we observe that Evidence Code section 1417 provides, "The genuineness of handwriting, or the lack thereof, may be proved by a comparison made by the trier of fact with handwriting (a) which the court finds was admitted or treated as genuine by the party against whom the evidence is offered or (b) otherwise proved to be genuine to the satisfaction of the court."

when he gave him the notices about ceasing the operation, that he basically told him, 'I don't care.' Well, he's in violation of the lease. He's given three notices. The lease is terminated. [¶] So, consequently, I'm going to award judgment for possession of the premises, forfeiture of the lease agreement."

Judgment in Linda Le's favor was entered on December 11, 2008. The judgment provides that the lease agreement is forfeited and Linda Le is awarded possession of the premises, $2,940 in holdover damages, and $255 in costs.

### 3. Motion for New Trial and Appeal

After judgment was entered in the unlawful detainer action, the Huynhs filed a motion for new trial. They argued that the proceedings in the unlawful detainer trial were irregular, the trial judge was not impartial, their original trial counsel had committed prejudicial misconduct, an examiner of questioned documents had subsequently concluded that the signatures of Sonny Huynh and Lai Tran were forged, the damages awarded were excessive, and the trial court had erroneously concluded that subleasing the premises violated the lease and that the notice to quit was proper. The record reflects that the motion for new trial was denied in March 2009.

The Huyhns appealed the December 2008 unlawful detainer judgment and the March 2009 order denying their motion for new trial to the appellate division of the superior court. In its October 13, 2009 order the appellate division ruled as follows: "Many of the issues Appellants are now raising on appeal were not properly raised at the trial. To the extent Appellants' counsel at trial did not raise certain arguments or present certain evidence, those arguments and evidence cannot be presented now as reasons to reverse the December 2008 Judgment. Regarding the notice to quit, although it was possible for Appellants to remove the auto repair shop after receiving notice, Appellants could not undo the violation of the lease that had already occurred. Under these circumstances, the notice to quit was not required to be framed in the alternative. [Citation.] Accordingly, the December 2008 Judgment is AFFIRMED. [¶] As for the

5

motion for a new trial, Appellants have not demonstrated an abuse of discretion by the trial court. Accordingly, the trial court's denial of the motion for new trial is AFFIRMED."

### B. *The Instant Civil Action*

#### 1. The Pleadings

In March 2011 the Huynhs filed a civil action against defendants Danny Le, Steve S. Lopes, Linda Le, and Luu Thien Le.[3] In their complaint, the Huynhs alleged that in 2003 they entered into a business purchase agreement for the purchase of a convenience store located at 1684 South Seventh Street in San Jose. They further alleged that "[i]ncluded within the terms of the Agreement was a lease for the Premises to plaintiffs at the rate of $3,000 per month, and an option for plaintiffs to either purchase the Premises within one year from the date of the Agreement, or in the alternative, to lease the Premises with rent payable at $3,000 per month for the first 10 years, and increased by 5% per year for the following 5 years."

The Huynhs elected to lease the premises for $3,000 per month and "made payments to defendant Linda Le, as directed." However, "[i]n or about October 2008, defendants presented plaintiffs with a purported Real Property Lease Agreement ('Forged Lease') purportedly executed by Plaintiffs, Lopes and Linda Le. Plaintiffs did not execute the Forged Lease, and in fact, plaintiffs' signatures on the Forged Lease were forged. . . . [¶] Purportedly relying on the terms . . . of the Forged Lease, commencing in October 2008, defendants made demand on plaintiffs for payment of real property taxes, and further demanded that plaintiffs cease operating an auto repair shop on the Premises, in purported violation of the terms of the Forged Lease. [¶] When plaintiff refused to acknowledge the validity of the Forged Lease, and refused to comply with defendants'

---

[3] Of the defendants named in the complaint, only Danny Le and Linda Le (hereafter, defendants) are parties to this appeal.

demands, defendants served plaintiffs with an unlawful detainer proceeding, and subsequently evicted plaintiffs from the premises in or about February 2010."

Based on these factual allegations, the complaint included causes of action against all defendants for breach of contract, forgery, violation of Business and Professions Code section 17200, intentional interference with prospective economic advantage, conversion, civil conspiracy, aiding and abetting, and a cause of action against defendant Danny Le for fraud. Defendants demurred on the grounds that the complaint did not state facts sufficient to constitute a cause of action, was uncertain, and was time-barred.

The record reflects that in October 2011 the trial court sustained the demurrers with leave to amend as to the causes of action for fraud, violation of Business and Profession Code section 17200, civil conspiracy, and aiding and abetting. Plaintiffs did not amend the complaint. As a result, the causes of action that remained to be litigated were breach of contract, forgery, intentional interference with prospective economic advantage, and conversion.

### 2. Motion for Judgment on the Pleadings

In December 2011 defendants filed a motion for judgment on the pleadings under Code of Civil Procedure section 438.[4] They argued that the trial court lacked subject matter jurisdiction pursuant to the doctrine of collateral estoppel, since the remaining causes of action all depended upon the allegation that defendants had forged the lease agreement and the forgery issue had been fully litigated in the unlawful detainer action.

In support of their motion, defendants filed a request for judicial notice of the following documents from the unlawful detainer action (*Le v. Huynh*, *supra*, No. 127446): (1) the Huynhs's answer; (2) the December 11, 2008 judgment; (3) the Huynhs's notice of motion for new trial and supporting memorandum of points and

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

authorities; (4) the appellate division's October 13, 2009 order; and (5) the December 10, 2008 reporter's transcript of the court trial.

In opposition, the Huynhs argued that the motion for judgment on the pleadings should be denied because the doctrine of collateral estoppel was a defense that did not deprive the trial court of subject matter jurisdiction.

### 3. The Trial Court's Order

The trial court entered its order granting the motion for judgment on the pleadings without leave to amend and granting the request for judicial notice on March 5, 2012. The order states: "[T]he judicially noticeable documents make clear that all remaining claims are barred by collateral estoppel. [Citation.] Plaintiffs' first, second, fifth, and sixth causes of action are based upon the premise that Plaintiffs' signatures on the Lease Agreement were forged. However, the issue of whether the Lease Agreement was forged was previously raised and fully litigated by Plaintiffs in the unlawful detainer action, [citations]. Moreover, it is clear that the unlawful detainer action resulted in a final judgment on the merits and that the parties against whom collateral estoppel is being asserted (Plaintiffs) were parties to the unlawful detainer proceeding. [Citation.]"

Judgment in defendants' favor was entered on March 5, 2012, and the Huynhs filed a timely notice of appeal.

### III. DISCUSSION

On appeal, the Huynhs argue that the trial court erred in granting the motion for judgment on the pleadings because the issue of whether their signatures on the lease agreement were forged was not fully and fairly litigated in the unlawful detainer action, and therefore the doctrine of collateral estoppel does not apply. We will begin our analysis with the applicable standard of review.

### A. *Standard of Review*

"Since 1994, motions for judgment on the pleadings have been authorized by statute. (Stats.1993, ch. 456, § 5, pp. 2524–2527, adding [§] 438; Stats.1994, ch. 493,

8

§ 2, amending [§] 438.)  Previously, they were allowed by common law.  [Citations.]  Generally, as such motions were, so they remain." (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 482, fn.2.)

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo.  'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action.  [Citation.]  Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.'  [Citation.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166 (*Angelucci*); see also *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.)

### B.  *Collateral Estoppel*

A motion for judgment on the pleadings may be brought on the ground that the complaint is barred by the affirmative defense of collateral estoppel.  (See *Barker v. Hull* (1987) 191 Cal.App.3d 221, 223-224.)

The California Supreme Court set forth the elements of collateral estoppel in *Lucido v. Superior Court* (1990) 51 Cal.3d 335 (*Lucido*): "Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.  [Citation.]  Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations]." (*Id*. at p. 341, fn. omitted; see also *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201, fn. 1.)  The correctness of the prior

9

decision is not material to the application of collateral estoppel, since, as this court has stated, " 'collateral estoppel may apply even where the issue was wrongly decided in the first action.' [Citations.]" (*Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, 1270.)

In *Vella v. Hudgins* (1977) 20 Cal.3d 251 (*Vella*), our Supreme Court considered the issue of whether an unlawful detainer judgment may have preclusive effect in a subsequent civil action. The court in *Vella* observed that an unlawful detainer action is "summary in character," with the issues ordinarily limited to "the right of immediate possession." (*Id*. at p. 255.) Consequently, "a judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations], or to adjudicate other legal and equitable claims between the parties [citations.]" (*Ibid*.)

However, the *Vella* court determined that " 'full and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate is provided—will result in a judgment conclusive upon issues material to that defense." (*Vella*, *supra*, 20 Cal.3d at pp. 256-257; see also *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 976 [determination in unlawful detainer judgment that Wells Fargo had valid title collaterally estopped homeowner's subsequent civil action challenging validity of title]; *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371-1372 [ruling in unlawful detainer action that rent stabilization ordinance applied was conclusive in tenant's civil action against landlord for violation of the ordinance]; *Pelletier v. Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1557 [collateral estoppel was not applicable in civil action for retaliatory eviction where prior unlawful detainer judgment was stipulated and therefore retaliation defense was not litigated in an adversary hearing].)

10

Having reviewed the rules governing the application of the doctrine of collateral estoppel in the context of a prior unlawful detainer judgment, we turn to the merits of the Huynhs's contentions on appeal.

### C. *Analysis*

The Huynhs contend that collateral estoppel should not apply in this case because they did not have a full and fair opportunity to litigate the issues of fraud and forgery. They explain that the unlawful detainer hearing was very brief, there was no pretrial discovery, and "[t]he 'quality' of the evidence presented . . . was inferior." The Huynhs also claim that the attorney who represented them at the unlawful detainer hearing was incompetent, the unlawful detainer judge was not impartial, and they "were not allowed to introduce into evidence the Agreement, containing the Controlling Lease [citation], or to introduce expert testimony to establish that their signatures on the Forged Lease were not genuine."

Alternatively, the Huynhs argue that they raise issues in the present action that were not actually litigated in the unlawful detainer action, including whether "the Forged Lease constituted a novation, a modification, or supplement to the terms of the Agreement." Finally, the Huynhs argue that application of collateral estoppel here would be contrary to public policy because they "were victims of unfairness" in the unlawful detainer trial.

Defendants respond that their motion for judgment on the pleadings established the elements of collateral estoppel and therefore relitigation of the the forgery issue is barred. They emphasize that the Huynhs had a full and fair opportunity to litigate their unsuccessful forgery claim in the unlawful detainer trial. As to the Huyhns's contention that their breach of contract claim was not fully litigated, defendants point out that the complaint in the instant civil action only alleges the forged lease as the basis for their cause of action for breach of contract. Further, defendants disagree that application of collateral estoppel in this case would violate public policy since they believe that the

11

Huynhs had a full and fair opportunity to present evidence that the lease was forged in the unlawful detainer trial.

We have independently reviewed the complaint and the documents that have been judicially noticed in order to determine whether the motion for judgment on the pleadings establishes the elements of the affirmative defense of collateral estoppel and the remaining causes of action (breach of contract, forgery, intentional interference with prospective economic advantage, and conversion) are therefore precluded. (See *Angelucci*, *supra*, 41 Cal.4th at p. 166.) As we will discuss, we conclude that the motion for judgment on the pleadings was properly granted because the allegation that the Huynhs's signatures were forged on the October 6, 2003 lease attached to the unlawful detainer complaint is the sole basis for the instant action and the issue was previously decided in the unlawful detainer action. (See *Vella*, *supra*, 20 Cal.3d at p. 257.)

Under the first element of the collateral estoppel, we determine that the issue of whether the Huynhs's signatures on the October 6, 2003 lease were forged, as alleged in the complaint in the instant action, is identical to the forged lease issue decided by the trial court in the prior unlawful detainer proceeding. (See *Lucido*, *supra*, 51 Cal.3d at p. 341.) The Huynhs have asserted in both cases that they did not sign the October 6, 2003 lease and the signatures on the lease are not theirs.

Second, under *Lucido*, we determine that the record in the unlawful detainer action shows that the forged lease issue was actually litigated in the unlawful detainer action. " 'When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated. . . .' " (*Barker*, *supra*, 191 Cal.App.3d at p. 226.) Here, the Huynhs's answer in the unlawful detainer action stated the allegation of "[f]raud-The purported lease was not properly executed," and Sonny Huynh testified that the signatures on the October 6, 2003 lease were not the signatures of himself and his wife. (*Lucido*, *supra*, 51 Cal.3d at p. 341.) In finding that

12

the Huynhs had violated the lease agreement, the trial court in the unlawful detainer action determined that signatures on the lease were not forged.

Third, the forged lease issue was necessarily decided in the unlawful detainer proceeding, since the unlawful detainer complaint was premised on the validity of the October 6, 2003 lease that the Huynhs had allegedly violated.

Fourth, there can be no dispute that the unlawful detainer judgment is final and on the merits, since the judgment was upheld by the appellate division in its October 13, 2009 order.

Finally, the parties against whom preclusion is sought in the instant case—the Huynhs—are the same as the parties to the unlawful detainer action. (See *Lucido, supra,* 51 Cal.3d at p. 341.)

We are not convinced by the Huynhs's contention that they did not receive a full and fair opportunity to litigate the forged lease issue in the unlawful detainer trial and therefore collateral estoppel should not apply. In *Vella*, our Supreme Court instructed that " 'full and fair' litigation of an affirmative defense" in an unlawful detainer action "[would] result in a judgment conclusive upon issues material to that defense" where (1) the defense was raised without objection; and (2) "a fair opportunity to litigate is provided." (*Vella*, *supra*, 20 Cal.3d at p. 256-257.) Here, the judicially noticed record of the unlawful detainer proceeding shows that the Huynhs raised the issue of whether the October 6, 2003 lease contained forged signatures without any objection and they were provided with a fair *opportunity* to litigate that defense in the unlawful detainer action.

Contrary to the Huynhs's argument, they were not precluded from presenting either a different lease agreement or testimony by an examiner of questioned documents as evidence at the unlawful detainer trial. The record reflects that the Huynhs sought to present a document evidencing a different lease agreement and an expert witness only by way of their motion for new trial. "[T]he existence of 'new evidence' normally does not

13

bar the application of collateral estoppel. [Citation].” (*Roos v. Red* (2005) 130 Cal.App.4th 870, 888 (*Roos*).)

Although the Huynhs have contended, both in their opposition to the motion for judgment on the pleadings and in their motion for new trial in the unlawful detainer action, that collateral estoppel should not apply because their unlawful detainer attorney was incompetent in presenting their defense, that contention has no merit. “The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel. [Citation.]” (*People v. Sims* (1982) 32 Cal.3d 468, 481.)

As to the contention that they did not have a fair opportunity to litigate their defense in the unlawful detainer trial because the trial judge was not impartial, we disagree. Our review of the reporter’s transcript for the unlawful detainer trial shows that the trial court provided the Huynhs with a full and fair opportunity to litigate their defense; failure to take full advantage of the opportunity does not bar the application of collateral estoppel. (See *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 873.) Moreover, “[c]ollateral estoppel may apply even where the issue was wrongly decided in the first action. ‘ “An erroneous judgment is as conclusive as a correct one.” ’ [Citations.]” (*Roos*, *supra*, 130 Cal.App.4th at p. 887.)

The decisions relied upon by the Huynhs in support of their claim that they did not have the opportunity for a full and fair hearing in the unlawful detainer trial predate the California Supreme Court’s 1977 decision in *Vella* and do not compel a contrary conclusion in this case. In *Wood v. Herson* (1974) 39 Cal.App.3d 737, the appellate court determined that the doctrine of res judicata applied to bar relitigation of the issue of title in an action for specific performance because the title issue had been determined in an prior unlawful detainer proceeding. (*Id*. at p. 745.) The appellate court noted that the unlawful detainer trial had lasted several days and that pretrial depositions had been taken, and stated that the plaintiffs “have had their day in court.” (*Ibid*.) However, the appellate court did not rule that pretrial discovery and a lengthy trial were necessary for a

14

litigant to have had the opportunity for a full and fair hearing in an unlawful detainer action. " ' "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." [Citation.]' [Citation.]" (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1335.)

In *Gonzales v. Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029, the defendants in an action to cancel a trustee's deed and redeem property contended that the action was barred under the doctrine of res judicata because the matter had already been litigated in a prior unlawful detainer proceeding. (*Id.* at pp. 1031, 1033.) The appellate court rejected their contention, ruling that "the record does not establish that plaintiff received a full adversary hearing on all the issues involved in his subsequent suit, such as the trustee's practice of discouraging competitive bidding at a foreclosure sale in order to help obtain the property for the corporation, in which he had an interest. It does not appear that the unlawful detainer court, in the exercise of its limited power to inquire, properly could have received and considered evidence of the fraud. We conclude that the subsequent suit was not barred by the doctrine of res judicata. [Citation.]" (*Id.* at p. 1036-1037.) The present case is distinguishable since evidence relating to the forged lease issue was received and considered by the unlawful detainer court. Moreover, we reiterate that our Supreme Court in *Vella* subsequently ruled that " 'full and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer," will prevent relitigation of the issue under the doctrine of collateral estoppel. (*Vella*, *supra*, 20 Cal.3d at p. 256-257.)

For these reasons, we conclude that the motion for judgment on the pleadings was properly granted and we will affirm the judgment.

15

## IV.  DISPOSTION

The judgment is affirmed.  Costs on appeal are awarded to respondents.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.

16