Filed 4/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN MILES,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY et al.,<br><br>    Defendants and Respondents. | G050294<br><br>(Super. Ct. No. RIC541334)<br><br>O P I N I O N |

            Appeal from a judgment of the Superior Court of Riverside County, Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.) Reversed.

            Alessi & Koening, Ryan Kerbow and Thomas J. Bayard for Plaintiff and Appellant.

            Houser & Allison, Eric D. Houser, Brian J. Wagner, and Eileen M. Horschel for Defendants and Respondents.

This case involves allegations of a wrongful foreclosure and related causes of action.  Plaintiff John Miles appeals from a judgment dismissing his breach of contract, fraud, and negligent misrepresentation causes of action pursuant to a sustained demurrer, and a summary judgment in favor of defendants on the wrongful foreclosure cause of action.

With respect to the demurred causes of action, we reverse.  In the record before us, the court did not offer any explanation for its ruling.  Based on our independent review of the complaint, we conclude plaintiff adequately stated his claims.

With respect to the wrongful foreclosure cause of action, we also reverse.  The court granted summary judgment on the sole basis that plaintiff could not prove damages because he did not have any equity in the home when it was sold at a non-judicial foreclosure sale.  Wrongful foreclosure is a tort, however, and thus plaintiff may recover any damages proximately caused by defendants' wrongdoing.  Plaintiff offered evidence that he lost rental income and suffered emotional distress as a result of the foreclosure.   This is disputed, of course, but it is sufficient to survive a summary judgment motion.

I.

*The Demurrer*

FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Plaintiff owned property in Riverside.  In July 2005, plaintiff refinanced the loan on his property with a total loan amount of $815,000.  This was an adjustable rate mortgage.  The loan was serviced by defendant HomEq Servicing (HomEq).  For the first 21 months of the loan, plaintiff was current on his payments.  During the period between

June 2007 and September 2007, the monthly payment on the loan increased first to $5,968 per month, and then to $6,800 per month.

In August 2007, plaintiff applied for a loan modification to try making payments more affordable. In February 2008, HomEq informed plaintiff that he had to make "a lump sum $12,000 payment as a 'modification processing fee' before Plaintiff could . . . see the terms of the proposed modification." Plaintiff paid the fee. In March 2008, HomEq gave plaintiff a loan modification agreement, to which the parties agreed. Under the terms of that agreement, plaintiff's loan balance was increased to $834,051.86. The interest rate was fixed at 5.990 percent (the prior rate was 7.490 percent), and the monthly payment would be $6,236.78. Plaintiff made a payment under that agreement,[1] but the next month HomEq stated they would no longer honor the terms of that agreement. Instead, HomEq sent a new agreement that increased the loan balance to $870,767.34. It offered no explanation for the change.

Plaintiff believed the March 2008 agreement was valid, and thus he made payments to HomEq under that agreement for March, April, and June of 2008, totaling $18,789. In June 2008, HomEq sent plaintiff yet another loan modification agreement, this time raising the balance to $895,117.18, again without explanation.

In July 2008, HomEq sent correspondence to plaintiff demanding a payment of $35,684 to process a new loan modification. HomEq then began refusing plaintiff's payments under the March 2008 agreement, requiring that he pay $7,600 per month instead. When plaintiff insisted on the terms of the March 2008 agreement, HomEq recorded a notice of default and election to sell the property. In October 2008, HomEq recorded a notice of trustee's sale of the property with a sale date of November 20, 2008.

---

[1] Although not alleged, we learn through the summary judgment motion that both parties signed the agreement.

HomEq then informed plaintiff it would give him a new modification if he would send a payment of $14,050. In light of the looming sale date, plaintiff complied. Instead of sending a loan modification agreement, however, HomEq sent a forebearance agreement and demanded a payment of $1,450 before it would send a modification agreement.

Plaintiff continued trying to work with HomEq until February 2009, when HomEq sent another loan modification agreement, this time asking for an upfront payment of $29,771. "Having paid $44,000.00 over a 10 month period for modifications that never materialized, Plaintiff had no faith that any further payments would have any better result so he declined to make the requested payment."

Defendants set a sale date for plaintiff's house of March 23, 2009. On March 19, 2009, plaintiff obtained a temporary restraining order against the sale of his house from the Riverside County Superior Court. Plaintiff alleges on information and belief that defendants had notice of the order. Nonetheless, defendants proceeded with the sale on March 23, 2009, and dispossessed plaintiff.

PROCEDURAL HISTORY

Plaintiff filed suit against defendants Deutsche Bank National Trust Company, the purported owner of the loan, and HomEq Servicing, which serviced the loan.[2] Defendants demurred to plaintiff's first amended complaint, and the court sustained the demurrer as to the causes of action for breach of contract, fraud, and

---

[2] Deutsche Bank National Trust Company was sued as trustee under a pooling and servicing agreement dated as of January 1, 2006, Morgan Stanley ABS Capital 1 Trust 2006 NC1. HomEq Servicing is in fact Barclays Capital Real Estate, Inc. doing business as HomEq Servicing, erroneously sued as simply HomEq Servicing.

4

negligent misrepresentation.[3] The court did not give any indication of the basis of its ruling, and we were not provided a record of the hearing. The court gave plaintiff 30 days leave to amend, which plaintiff chose not to do.

Defendants then moved for summary judgment on the lone remaining cause of action for wrongful foreclosure, which the court granted (the facts and procedural history pertinent to the summary judgment motion will be discussed below). Plaintiff timely appealed.

DISCUSSION

"On appeal from a judgment dismissing an action after sustaining a demurrer . . . , the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)

We begin by quickly dispensing with an argument that runs throughout respondents' brief: "Plaintiff's fraud, breach of contract and negligent misrepresentation causes of action were not sustained without leave to amend, they were sustained with 30 days leave to amend. Plaintiff chose to not file a timely amended complaint pursuant to the trial Court's order and therefore voluntarily abandoned those causes of action. Plaintiff cannot appeal his decision not to pursue the other causes of action." Defendants

---

[3] The court also sustained the demurrer to plaintiff's cause of action entitled "One Action Violation," which he is not pursuing on appeal.

cite no authority for this remarkable proposition, and it would be an absurd rule indeed. If a plaintiff had already stated all available facts, but was given an opportunity to amend, how could forfeiture be avoided under defendants' rule? By making up facts? That is not the law. Even if given an opportunity to amend, a plaintiff may stand on the sufficiency of the complaint. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 ["[w]hen a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer"].) There was no forfeiture.

Next, defendants contend the demurrer to the breach of contract cause of action was properly sustained because the complaint "does not allege whether the contract was in writing, oral or implied." (See Code Civ. Proc., § 430.10, subd. (g) [complaint demurrable if, "[i]n an action founded upon a contract, it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct"].) This is a purely technical argument, as defendants' summary judgment motion demonstrates they knew which contract was at issue, were in possession of it, and thus knew it was in writing. The problem with this purely technical argument is that defendants did not comply with their own technicalities. Defendants' demurrer did not mention Code of Civil Procedure section 430.10, subdivision (g). Instead, the demurrer simply stated, "Plaintiff's third cause of action for breach of contract does not state facts sufficient to constitute a cause of action against Defendants. (Cal. Code Civ. Proc. §§ 430.10 (e) and (f).)" We will not uphold a demurrer on a technicality not asserted in the trial court. Further, as noted above, plaintiff alleged that in March 2008, HomEq gave plaintiff a loan modification agreement, to which the parties agreed. And specific terms of that agreement are alleged, such as the balance of the loan, the interest rate, and the required monthly payments. A reasonable inference drawn from those allegations is

6

that the contract plaintiff relies upon, the March 2008 modification agreement, was in writing.

Defendants' only remaining argument in support of the dismissal of the breach of contract cause of action is that plaintiff failed to attach the contract or to plead its terms verbatim. In support of that argument, defendants cite *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 459 (*Otworth*), which stated, "If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." The *Otworth* court did not offer any analysis to support that proposition. Instead, it simply cited *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 59 (*Wise*) (overruled on other grounds in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510, 521). The *Wise* court stated, "where a written instrument is the foundation of a cause of action, it may be pleaded *in haec verba* by attaching a copy as an exhibit and incorporating it by proper reference." (*Wise*, at p. 59.) It is readily apparent that the *Otworth* court read more into that statement than is actually there. The *Wise* court was simply stating one available method of pleading the contract — it was not specifying the *exclusive* means of pleading a contract. The correct rule is that "a plaintiff may plead the legal effect of the contract rather than its precise language." (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 199.) Because it is apparent that the *Otworth* court misread *Wise*, and because, in any event, we are bound by our Supreme Court, we decline to follow *Otworth*. Accordingly, plaintiff's failure either to attach or to set out verbatim the terms of the contract was not fatal to his breach of contract cause of action.

7

Aside from these arguments, it appears that plaintiff alleged the basic elements of a breach of contract claim. "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239.) Plaintiff alleged an express contract to refinance his loan, including the loan balance, the interest rate, and the monthly payment. He alleged he performed by making payments under the agreement. He alleged defendants breached that contract by repudiating it and refusing to accept payments under it. And he alleged he was damaged by various fees he was charged and by being evicted from his home. Accordingly, we reverse the dismissal of plaintiff's breach of contract claim.

Defendants offer two arguments in support of the dismissal of the fraud and negligent misrepresentation causes of action. First, they contend a misrepresentation cause of action does not lie where the misrepresentation pertains to future events: "The reason for this requirement is obvious: it is not possible to determine whether someone making a representation did so with knowledge, or reckless disregard, of the truth of the alleged representation if the representation was not made at a time in which it was known to be true or false. Therefore, the alleged promise to modify the Plaintiff's loan cannot form the basis of a fraud or misrepresentation claim, because the Plaintiff cannot allege that the person making such a representation knew it to be true or false, as it concerned a future event." Defendants later concede, however, "The only circumstances under which a future promise may form the basis of a fraud claim is where the plaintiff can allege facts that the promisor made a promise with no intent of performing." Indeed, the nature of promissory fraud is that it is a promise of *future* performance with no present intent to actually perform. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) And this is precisely what plaintiff alleges: "42. Defendants induced Plaintiff into entering into making payments of more than $44,000.00 on the promise of providing Plaintiff with a

8

reasonable modification of the loan on the Property. [¶] 43. At the time that Defendants made these representations, they knew them to be false as Defendants had no intention of honoring their promise to provide Plaintiff with a permanent loan modification but instead, intended to strip the Plaintiff of all of his liquid assets and then proceed with foreclosure on Plaintiff's Property." Accordingly, the misrepresentation causes of action are not demurrable on the ground they involved a future event.

Defendants' second argument is that the misrepresentation allegations lack specificity. Defendants rely on the rule that in alleging fraud against a corporation, the plaintiff must "'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645.) "We observe, however, certain exceptions which mitigate the rigor of the rule requiring specific pleading of fraud. Less specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy,' [citation]; '[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party . . . .' [Citation.] [¶] Additionally, . . . considerations of practicality enter in." (*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217 (superseded by statute on other grounds in *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242).)

Plaintiff alleges defendants induced him to make over $44,000 in payments based on the false promise that they would provide a reasonable modification of the loan. The alleged facts in support are that HomEq initially agreed to the March 2008 contract but then reneged on it and on various particular dates sent more agreements and demanded more fees. The primary omission in the allegations is that plaintiff does not identify the names of the people he spoke to nor their authority to speak. In our view, this omission falls comfortably in the realm of information that lies more in the

9

possession of defendants. (See *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 ["'While the precise identities of the employees responsible . . . are not specified in the loan instrument, defendants possess the superior knowledge of who was responsible for crafting these loan documents'"].) Defendants admitted in the summary judgment motion, for example, that they possessed a comment log of the phone calls plaintiff had made to HomEq. Such evidence is easily foreseeable at the demurrer stage. Further, as revealed by attachments to the complaint, some of the communications from HomEq were in the form of letters that were simply signed by "HomEq Servicing." Finally, in an era of electronic signing, it is often unrealistic to expect plaintiffs to know the who-and-the-what authority when mortgage servicers themselves may not actually know the who-and-the-what authority. Accordingly, we do not consider that omission fatal. Thus we will reverse the dismissal of the misrepresentation causes of action.

II.

*The Summary Judgment Motion*

FACTS

On July 1, 2005, plaintiff obtained a mortgage loan and executed a promissory note and deed of trust in the amount of $815,000. The promissory note called for monthly interest only payments in the amount of $4,068.21 from September 2005 to August 2007. "Thereafter, Plaintiff was obligated to pay principal and interest payments through the maturity of the loan." That loan was ultimately assigned to defendant Deutsche Bank National Trust Company and serviced by HomEq.

10

In 2005 and 2006 plaintiff failed to pay his property taxes, so HomEq advanced the funds for plaintiff and demanded repayment. In April 2007 there remained an escrow shortage of $31,081. HomEq informed plaintiff that he needed to bring it current and that if he did not, his monthly payment would be increased to $5,937.64 to cover the shortfall. Plaintiff agreed to the increased monthly payment, which he made in May, June, July, August, and September of 2007. In September 2007, plaintiff submitted an application for a loan modification. Plaintiff did not make payments in October or November 2007 (plaintiff claims this was at HomEq's advice to help the modification process; HomEq denies this). He made a payment in December 2007 and January 2008 of $5,293.99 (the reason for the approximately $540 shortfall is disputed). In February 2008 the proposed loan modification was ready for review. Plaintiff claims, however, that HomEq refused to send the agreement unless he paid a one-time processing fee of $12,075.09. It is undisputed that he paid that amount in February 2008, but defendants dispute that they required the money as a processing fee or otherwise refused to send the agreement.

HomEq sent plaintiff a loan modification agreement dated March 7, 2008. Under the terms of that agreement, plaintiff was to make a $3,500 down payment concurrent with signing the agreement; $45,773.89 was to be added to the principal balance of the loan to reflect past due interest, late fees and the monies HomEq had paid for plaintiff's delinquent property taxes. Plaintiff was given a credit of $20,884.08 to reflect recent payments, however, resulting in a net increase in the loan balance of $24,889.81. The resulting balance was $839,889.81. The interest rate was reduced from an adjustable 7.49 percent to a fixed 5.99 percent. However, the rate was only fixed for five years and the agreement did not specify how the rate would be calculated thereafter. Plaintiff's new monthly payment was $6,272.78. Once he received the agreement, plaintiff called HomEq to inquire how the interest rate would be calculated after the five years. HomEq advised plaintiff that the interest rate would be fixed at 5.99 percent for

11

the life of the loan, and also informed plaintiff that the version he received had errors and needed to be revised. Before receiving the revised agreement, plaintiff made a payment of $6,272.78 pursuant to the terms of the March 7 agreement.

Plaintiff subsequently received a revised agreement dated March 13, 2008. The revised agreement actually slightly reduced the loan balance to $834,051.86 and the monthly payment to $6,236.78. It also confirmed that the interest rate would be fixed at 5.99 percent for the life of the loan. Plaintiff signed the March 13 agreement and returned it to HomEq. HomEq received it, forwarded it to management for review, and the agreement was subsequently signed by Blanca Vargas, HomEq Vice-president.

On April 15, 2008, four days after HomEq received, approved and signed the March 13 agreement, HomEq sent plaintiff a default letter demanding that he pay $39,997.18 or face immediate foreclosure. One week later, HomEq accepted plaintiff's payment of $6,236.78. On April 30, just a little over one week later, HomEq sent another loan modification agreement, this time raising the loan balance to $870,000. HomEq told plaintiff he had to sign the latest loan modification agreement or face foreclosure. Plaintiff claims that, thereafter, HomEq refused any payments under the March 13 agreement. HomEq denies that it refused payments. In any event, it appears no regular payments were made in May 2008. It appears that HomEq believed the balance had been miscalculated on the March 13 agreement and thus refused to honor it (even though management had reviewed it and a vice-president had signed it).

Around June 11, 2008, HomEq sent another revised proposed loan modification agreement. The revised agreement would have raised the loan balance to $895,000. On June 19, 2008, plaintiff made another payment of $6,236, consistent with the March 13 agreement.

On June 24, 2008, HomEq sent plaintiff an account statement demanding a payment of $80,034.46 to bring the account current. On July 24, 2008, HomEq sent a letter to plaintiff stating that an unspecified recent payment was insufficient. At around

12

the same time, HomEq sent another statement, but this one showed the principal balance on the loan dropping by $3,253.47 and the past due amount dropping by $23,021.52 and the escrow balance dropping by $7,477.76. This represented a total reduction in the amount owed of $33,752.75. Plaintiff does not believe he paid this money and does not know how it was calculated.

The next day, a notice of default and election to sell was sent to plaintiff, listing the amount in default as $52,558.03 — a different amount than had been listed on the statement.

In a letter dated October 10, 2008 (the record does not reveal what transpired between July and October), HomEq offered to provide plaintiff with "workout" options. On October 29, 2008, plaintiff received a notice of trustee's sale setting the sale date as November 20, 2008. As a result of the looming sale, on November 5, 2008, plaintiff submitted another loan modification application. On November 10, 2008, HomEq sent plaintiff a letter advising him he had been approved for a "Repayment Plan." The letter did not state what the terms of the repayment plan would be. Instead, the letter stated that the terms of the plan would be mailed separately and that plaintiff needed to make a payment of $14,050 within three days. On November 11, 2008, plaintiff (or possibly his attorney) contacted HomEq to see the terms of the repayment plan but was told he could not see it until he paid the $14,050. Plaintiff did so. On November 28, 2008, HomEq sent plaintiff a "forebearance agreement" that would have required him to make payments of $13,475.74 per month for four months and then another lump sum payment of $63,176.07 at the end of that period. Unable to afford those payments, and still believing the March 13 agreement to be valid, plaintiff refused to sign the forebearance agreement.

Around December 4, 2008, plaintiff received a letter from HomEq offering another home loan modification predicated on plaintiff making another down payment of

13

$1,450.[4]  On January 12, 2009, HomEq sent plaintiff a letter stating he was in default under the forebearance agreement (though there is no indication in the record that plaintiff ever signed that agreement).  On February 17, 2009, HomEq sent plaintiff another letter offering to send plaintiff another modification if he made a payment of $29,771.  On March 17, 2009, plaintiff received a "Payoff Statement indicating that the total amount due on the loan was $885,110.02."  The next day he received another "Payoff Statement," this time indicating the total amount of the loan was $891.032.31.

The following day, March 19, 2009, the Riverside Superior Court issued a temporary restraining order blocking the sale of plaintiff's home.  It is disputed whether defendants received notice of the order.  On March 23, 2008, defendants sold plaintiff's home and subsequently evicted him.

PROCEDURAL HISTORY

After the court sustained the demurrer, defendants moved for summary judgment on the only remaining cause of action, wrongful foreclosure.  The court granted the motion, reasoning, "Damages in a wrongful foreclosure action are based on the fair market value of the property at the time it was sold, minus any mortgages and liens against the property.  [Citation.]  Defendant provided evidence that Plaintiff owed $891,375.18 when the property was sold, and evidence that the property was worth less than $815,000 when it was sold."  "Although Plaintiff argued that he should be entitled to include lost rental income, monies spent on improvements[,] attorneys' fees and emotional distress damages when calculating damages, the Court finds no case supporting this specific method of calculating damages when only wrongful foreclosure is alleged.  To the contrary, each item identified would necessarily be reflected in the

---

[4]  Plaintiff states the amount as $1,450; defendants state it as $14,050.

14

value of the property." The court also noted there was no evidence that defendants were served with the temporary restraining order prior to the sale of the property.

## DISCUSSION

The court granted summary judgment on the wrongful foreclosure cause of action on the sole ground that plaintiff could not prove damages. The court believed the only permissible damages in a wrongful foreclosure suit is the lost equity in the home, and where there is no equity, no cause of action will lie. We disagree.

There are surprisingly few California cases describing the nature of a wrongful foreclosure cause of action. The most thorough treatment is found in *Munger v. Moore* (1970) 11 Cal.App.3d 1 (*Munger*), the case both the court and defendants relied upon. The facts of that case are somewhat complicated, but to simplify to only the relevant facts, the plaintiff defaulted on a loan secured by real property. (*Id.* at p. 5.) Prior to any foreclosure sale, the plaintiff timely tendered the amount in default under the loan. (*Id.* at pp. 5-6.) The defendants (the lenders) refused the tender and foreclosed on the property. (*Id.* at p. 6.) They were ultimately able to sell the property for an amount that exceeded all encumbrances on the property by $30,000. At trial, the court awarded that amount to the plaintiff in damages. (*Id.* at pp. 11-12.)

Affirming, the court of appeal articulated the nature of a wrongful foreclosure action and the proper measure of damages as follows: "[A] trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust. [Citations.] This rule of liability is also applicable in California, we believe, upon the basic principle of tort liability declared in the Civil Code that every person is bound by law not to injure the person or property of

15

another or infringe on any of his rights." (*Munger*, *supra*, 11 Cal.App.3d at p. 7, fn. omitted.)

We agree with this basic analysis of a tort of wrongful foreclosure. A tort of wrongful foreclosure satisfies the basic factors for finding a tort duty enunciated in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650-651. The transaction is intended to affect the plaintiff — it is intended to dispossess the plaintiff; it is easily foreseeable that doing so wrongfully will cause serious damage and disruption to the plaintiff's life; the injuries are directly caused by the wrongful foreclosure; the moral blame of foreclosing on someone's home without right supports finding a tort duty; and recognizing a duty will help prevent future harm by discouraging wrongful foreclosures. (See *Ibid.*) Such a tort bears some analogy to a wrongful eviction tort, which is well recognized and can exist in parallel with a breach of lease claim. (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 293 ["California recognizes the tort of wrongful eviction"]; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1033, 1039 [permitting both a breach of lease and tortious wrongful eviction to proceed].)

The basic elements of a tort cause of action for wrongful foreclosure track the elements of an equitable cause of action to set aside a foreclosure sale. They are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104.) Federal District courts interpreting this cause of action have frequently cited the Nevada rule articulated in *Collins v. Union Federal Sav. & Loan Ass'n* (Nev. 1983) 662 P.2d 610, 623 that "[a]n action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of

16

condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." (See, e.g., *Das v. WMC Mortgage Corp.* (N.D.Cal., Oct. 29, 2010, C10-0650 PVT) 2010 U.S.Dist. Lexis 122042; *Roque v. Suntrust Mortgage, Inc.* (N.D.Cal., Feb. 10, 2010, C-09-00040 RMW) 2010 U.S. Dist. Lexis 11546.) In other words, mere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case. This is a sound addition.

After describing the cause of action as a tort, the *Munger* court proceeded to describe the measure of damages as follows: "Civil Code section 3333 provides that the measure of damages for a wrong other than breach of contract will be an amount sufficient to compensate the plaintiff for all detriment, foreseeable or otherwise, proximately occasioned by the defendant's wrong. In applying this measure it must be noted that the primary object of an award of damages in a civil action, and the fundamental theory or principle on which it is based[,] is just compensation or indemnity for the loss or injury sustained by the plaintiff and no more. [Citation.] Accordingly, where a mortgagee or trustee makes an unauthorized sale under a power of sale he and his principal are liable to the mortgagor for the value of the property at the time of the sale in excess of the mortgages and liens against said property." (*Munger*, *supra*, 11 Cal.App.3d 1, 11.)

Both the trial court and defendants interpreted *Munger* narrowly, with defendants going so far as to say that "[t]he rule in *Munger* is an application of the benefit of the bargain rule." It would be strange, however, to apply a *contract* measure of damages to a *tort*. We read *Munger* more broadly. It announced the rule that wrongful foreclosure is a tort (*Munger*, *supra*, 11 Cal.App.3d at p. 7), and the measure of damages is the familiar measure of tort damages: all proximately caused damages. In *Munger*, the only damages at issue were the lost equity in the property, and certainly that is a recoverable item of damages (*id*. at p. 11). It is not, however, the *only* recoverable item

17

of damages.  Wrongfully foreclosing on someone's home is likely to cause other sorts of damages, such as moving expenses, lost rental income (which plaintiff claims here, and damage to credit.  It may also result in emotional distress (which plaintiff also claims here).  As is the case in a wrongful eviction cause of action, "'The recovery includes all consequential damages occasioned by the wrongful eviction (personal injury, including infliction of emotional distress, and property damage) . . . and upon a proper showing . . . , punitive damages.'" (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039.) [5]

The rule applied by the trial court and urged by defendants would create a significant moral hazard in that lenders could foreclose on underwater homes with impunity, even if the debtor was current on all debt obligations and there was no legal justification for the foreclosure whatsoever.  So long as there was no equity, there would be no remedy for wrongful foreclosure.  And since lenders can avoid the court system entirely through nonjudicial foreclosures, there would be no court oversight whatsoever.  Surely that cannot be the law.  The consequences of wrongfully evicting someone from their home are too severe to be left unchecked.  For the reasons expressed above, a tort action lies for wrongful foreclosure, and all proximately caused damages may be recovered.  Accordingly, the summary judgment is reversed. [6]

---

[5] Importantly, we are not suggesting any of these damages are actually recoverable in this case.  It may be that plaintiff's damages, if any, are entirely offset by the benefit of being free of an underwater loan.  That issue has not been addressed by the parties, however, and we express no opinion one way or the other.

[6] After the events giving rise to this lawsuit, the legislature enacted a statutory cause of action to recover damages against a lender or loan servicer who forecloses on a home where there has been a loan modification and there is no default on the loan modification. (Civ. Code, §§ 2924.12, subd. (b), 2923.6, subd. (c)(3).)  The applicability of this section has not been raised in the appeal, and we offer no opinion on how it would impact, if at all, a common law tort action for wrongful foreclosure.

DISPOSITION

The judgment is reversed.  Plaintiff shall recover his costs incurred on appeal.

IKOLA, J.

WE CONCUR:

ARONSON, ACTING P. J.

FYBEL, J.