Filed 3/3/23  Downie v. The Rama Fund, LLC CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ALEXIS ASHLEY DOWNIE, | |
| Plaintiff and Appellant, | E078068 |
| v. | (Super.Ct.No. PSC2004861) |
| THE RAMA FUND, LLC et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  David M. Chapman, Judge.  Affirmed.

Law Office of Pauline E. Villanueva, Pauline E. Villanueva for Plaintiff and Appellant.

Blank Rome, Cheryl S. Chang; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Alana H. Rotter, and Joseph V. Bui for Defendants and Respondents.

1

**INTRODUCTION**

This is the second appeal involving various transactions committed to reverse a foreclosure sale and to retain possession of property acquired by The Rama Fund (Rama) at a trustee's sale. The original purchaser and debtor, Billie Jo Frye, as trustee of the Brookville Trust, obtained a loan secured by a deed of trust that was assigned to Rama. When Frye defaulted on the loan, a trustee's sale was scheduled to take place. Frye, along with Thomas Downie (original beneficiary of the Brookville Trust) and plaintiff Alexis Ashley Downie, made various attempts to evade the sale (by filing for bankruptcy in multiple jurisdictions, including the State of Washington, followed by intra-familial transfers of title to plaintiff as the newly appointed trustee), which were unsuccessful, allowing the nonjudicial foreclosure sale to take place in November 2020, where Rama obtained title to the premises. Rama then sued for unlawful detainer, and judgment was entered in favor of Rama. (E077654, *Rama Fund v. Frye,et al.*, [Feb. 15, 2023, nonpub. opn]) Plaintiff then sued Rama and the other entities who participated in the original purchase of the property by Frye for wrongful foreclosure. The trial court sustained Rama's demurrer to plaintiff's second amended complaint (SAC) without leave to amend, imposed sanctions on plaintiff and her attorneys, and plaintiff appeals.

On appeal, plaintiff argues the court erred in (1) sustaining the demurrer without leave to amend, and (2) denying plaintiff's ex parte motion to consolidate the unlawful detainer case with the wrongful foreclosure action. We affirm.

2

## BACKGROUND

Because this appeal is from a judgment of dismissal upon an order sustaining a demurrer to the SAC without leave to amend, we summarize and accept as true all well-pleaded material allegations of the complaint. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 156-157; see also, *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8, fn. 3; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 7.) We do not, however, accept the truth of contentions or conclusions of fact or law (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), or other allegations inappropriate in a formal legal pleading. We therefore limit the background to the ultimate facts pled, as well as matters for which judicial notice is proper.

On March 19, 2014, Billie Jo Frye purchased property in La Quinta. On October 4, 2018,[1] Ms. Frye executed a note and deed of trust in favor of Athas Capital Group, Inc. for a loan in the amount of $ 1,590,500. On October 4, 2018, Athas Capital Group, Inc., assigned its interest in the note to defendant Rama Fund.

Frye defaulted on the loan payments, and on August 16, 2019, Rama, through its agent TD Specialists[2], recorded a notice of default and election to sell under deed of trust. On October 20, 2019, TD Specialists, on behalf of Rama, recorded a notice of trustee's sale, originally scheduled to take place on December 17, 2019, although the sale did not

[1] The SAC erroneously alleges the promissory note and deed of trust were executed on October 5, 2018, however, the documents themselves indicate otherwise.

[2] By the time of the hearing on the demurrer to the SAC, Rama was the sole remaining defendant.

3

actually take place until October 2020 because Frye filed a lis pendens affecting the property, and made multiple attempts to file for bankruptcy in both California and the State of Washington, resulting in stays of the state court actions, although ultimately all of the bankruptcies were dismissed.[3]

After the dismissal of Frye's and Brookville's bankruptcy, a settlement agreement was reached between Rama Fund and Brookville Trust regarding repayment of the note. The agreement provided that the total amount of the unpaid debt was $2,043,726.07 and set out a schedule of payments on the debt. The agreement specifically provided that: three payments of $275,000 each plus a balloon payment of $1,025,000, would be wired to Rama, in the total amount of $1,850,000; the first payment was due on or before July 6, 2020, and if it was received timely, Rama would postpone the foreclosure sale, currently set for July 7, 2020, for 30 days, such that the foreclosure sale will be scheduled

---

[3] Rama requested judicial notice of the various bankruptcy attempts in its demurrer. The first bankruptcy (filed in the Bankruptcy Court Central District of California in Los Angeles, in January 2020) was dismissed for failure to file schedules, statements, or a plan. The second bankruptcy, also filed in the Central District in March 2020, was dismissed in April 2020 for failure to file the proper schedules, but the docket in that case also notes other bankruptcy filings in different bankruptcy courts in California. In April 2020, Frye filed a Chapter 11 petition in the Western District Court of the State of Washington, this time as an entity instead of as an individual. That case was also dismissed. The last attempt by Frye to discharge the debt was another Chapter 11 matter filed in the Bankruptcy Court Central District of California, in Riverside, in August 2020, and dismissed in October 2020, after Rama finally received notice of the filing and made a motion for relief from the stay due to its secured interest in real property. The bankruptcy court granted the motion made on grounds that the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors involved. The bankruptcy court dismissed that case with a special restriction against filing a new bankruptcy and an order imposing sanctions. Plaintiff omitted this information in its complaint, but as matters for which judicial notice is permissible, we consider the information in reviewing the trial court's ruling on the demurrer.

for a date no sooner than August 6, 2020.  The second payment was due on or before August 6, 2020, and if the first payment and second payments were received timely, Rama agreed to postpone the foreclosure sale, such that it would be scheduled for a date no sooner than September 5, 2020.  The third payment was due on or before September 4, 2020, and if the first payment, second payment, and third payment were received timely, Rama agreed to further postpone the foreclosure sale to October 1, 2020.  The fourth balloon payment in the amount of $1,025,000 was due before September 30, 2020.

The agreement further provided that if all the payments were timely, Rama would apply the funds to the loan and the loan would be extinguished.  However, if any payment were untimely, nonpayment of any installment shall be considered an event of default under both the deed of trust and note, and Rama, or its successors and assigns, shall have the right to foreclose on the property, which would be uncontested in all respects by the borrower, the trust, or Downie.

The first payment was made timely, but the second payment was not.  Thomas Downie (CEO of Brookville and father of Alexis Ashley Downie) requested an extension to come up with the funds, but Rama denied the request.  Plaintiff, Frye and Brookville, then attempted to obtain funds to prevent the foreclosure sale and on October 9, 2020, issued a demand for reinstatement of the loan, citing Civil Code section 2924c, to identify the full past due amount.  In the demand letter, counsel for plaintiff represented that plaintiffs would then pay the full amount to reinstate the loan.  Plaintiff also demanded postponement of the foreclosure sale.

5

On September 9, 2020, a series of intrafamilial transfers resulted in Frye resigning as trustee of the Brookville Trust, after which Thomas Downie, as CEO of Brookville Corporation (the business entity) appointed his daughter Alexis Ashley to serve as trustee in Frye's place. Then, that same day, plaintiff Alexis Ashley Downie, in her capacity as trustee, quitclaimed the property to Brookville Corporation.

In the meantime, Rama had sent a reinstatement quote as requested on October 16, 2020 followed by a demand for payoff that had to be received by October 19, 2020 because the foreclosure sale was scheduled for October 20, 2020. Unfortunately, the response to plaintiff's demand for reinstatement apparently went to counsel's spam folder and the deadline passed for yet another opportunity to become current on their payments, although the SAC alleges plaintiff's assumption that Rama and others involved in the loan reinstatement process, intentionally frustrated plaintiff's efforts.

Rama purchased the property at the foreclosure sale. Plaintiff filed this suit against Rama and others who were no longer parties at the time of the SAC. The SAC was filed on July 6, 2021, and alleges causes of action for wrongful foreclosure, breach of contract, and quiet title (although the cover page also refers to a cause of action for usury and another for declaratory relief). On August 9, 2021, Rama demurred to the SAC.

Prior to the court's ruling on the demurrer, on August 19, 2021, plaintiff filed an ex parte emergency motion to consolidate this case with an unlawful detainer case filed by Rama, pending in a different department, in which Rama sought possession of the property and eviction of plaintiff. The court found no emergency existed and denied the

6

ex parte consolidation motion without prejudice to refile it as a properly noticed motion. Plaintiff then filed a second ex parte motion to consolidate as well as an ex parte emergency motion for a restraining order and preliminary injunction to stay the eviction action. These applications were also denied without prejudice. Finally, on September 1, 2021, plaintiff made a noticed motion to consolidate the two cases (the unlawful detainer case and the wrongful foreclosure case) for oral argument. The trial court denied the motion because consolidation was not factually warranted, it was untimely, and not all the parties had been served.

On September 8, 2021, Rama made a motion for sanctions against plaintiff and her counsel, seeking $13,544, based on the patently false statements made by plaintiff in the SAC. On October 1, 2021, the court sustained Rama's demurrer to the SAC without leave to amend. On October 8, 2021, the court granted Rama's motion for sanctions in part, awarding defendant $5980. The court also made a referral to the State Bar of California. On November 4, 2021, plaintiff appealed the judgment of dismissal and the order for payment of sanctions.[4]

**DISCUSSION**

### A.    *Challenge to Order Dismissing SAC Without Leave to Amend*

"A general demurrer presents the same question to the appellate court as to the trial court, namely, whether the plaintiff has alleged sufficient facts to justify any relief,

---

[4] Plaintiff has raised no legal challenges to the order imposing sanctions, so we do not need to address that issue. (*Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726, citing *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4 [failure to raise a claim of error on appeal forfeits the issue].)

notwithstanding superfluous allegations or claims for unjustified relief." (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 952–953, citing *Harnish v. Bramer* (1886) 71 Cal. 155, 158; *Matteson v. Wagoner* (1905) 147 Cal. 739, 742; *California Trust Co. v. Cohn* (1932) 214 Cal. 619, 628; *Alcorn v. Anbro Engineering, Inc*. (1970) 2 Cal.3d 493, 496.)

We review de novo the order sustaining the demurrer, treating the demurrer as admitting all material facts properly pleaded, but, because only factual allegations are considered on demurrer, we must disregard any contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan*, *supra,* 39 Cal. 3d at p. 318; *WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 151, citing *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957.) In reviewing the lower court's ruling on demurrer, we base our statement of the factual and procedural background on the pleadings and such matters as may be judicially noticed. (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1381, 1386; *Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318, citing *Hill v. Miller* (1966) 64 Cal.2d 757, 759.) When a demurrer is sustained without leave to amend, *Blank v. Kirwin, supra,* instructs us to "decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of

8

discretion and we affirm." (*Blank v. Kirwin, supra* at p. 318; *Kilgore v. Younger* (1982) 30 Cal.3d 770, 781; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Cooper v. Leslie Salt Co., supra*, at p. 636.)

In the present case, the trial court did not provide a written tentative ruling to the SAC, but the SAC alleged the same first three causes of action as the first amended complaint (FAC), and suffered from the same defect of pleadings which affected the FAC. In that ruling, the trial court considered the terms of the settlement agreement (reached by the parties after Rama's original notice of trustee's sale, which led to the various bankruptcy court filings in an effort to stall the foreclosure sale) to be controlling. Significantly, plaintiff herself attached the agreement as an exhibit to her complaint, so the court, considering matters only appearing on the face of the complaint or subject to judicial notice, could properly consider its effect.

In that agreement, binding on plaintiff, Brookville admitted being in default on the loan, acknowledged the various actions in the bankruptcy court, and reached the agreement to settle the dispute over the loan. The agreement contains recitals outlining the various transactions and indebtedness of Frye as trustee and borrower, along with the other "guarantors" of the loan, binds the borrower, the personal guarantors and Thomas Downie. The key promises were that Downie would wire three payments of $275,000 each, according to a particular schedule, followed by a balloon payment in the amount of $1,025,000, totaling $1,850,000, in return for Rama's agreement to postpone the

9

foreclosure sale. However, "nonpayment of any installment shall be considered an event of default under both the Deed of Trust and Note, and RAMA, or its successors and assigns, would have the right to foreclose on the Property, which shall be uncontested in all respects by Borrower or Downie."

Plaintiff acknowledged the settlement agreement in her complaint, and even appended a copy of the agreement, which superseded the original loan agreement and fully authorized the foreclosure by Rama. Moreover, according to the agreement, plaintiff agreed that in the event of default on payments, the foreclosure would not be contested. Yet both of those things happened, giving Rama the right to proceed with the foreclosure sale without the need to engage in further efforts by plaintiff to reinstate the loan.

In addition, plaintiff has failed to address the defects in her pleading relating to the causes of action pled, which we now address. In so doing, we apply the de novo standard of review to exercise our independent judgment to determine whether the operative complaint states valid causes of action as a matter of law. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300.) For purposes of review, we assume the truth of properly pleaded factual allegations in the operative complaint and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. (*Ibid.*) "We do not assume the truth of contentions, deductions, or conclusions of fact or law, and may disregard allegations that are contrary to the law or to a fact that may be

judically noticed." (*Fischer v. Time Warner Cable Inc.* (2015) 234 Cal.App.4th 784, 790.)

1.      *The Wrongful Foreclosure Cause of Action.*

A cause of action for wrongful foreclosure comprises four elements: """ (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering; and (4) no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale.'"" (*Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1306-1307, quoting *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.) The court in *Majd* went on to explain that "'mere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case.'" (*Majd, supra,* at p. 1307, quoting *Miles, supra,* at p. 409.)

Here, plaintiff's cause of action alleges that she made multiple requests for a reinstatement quote, that a foreclosure date had been scheduled, that the notice of default, served prior to the initiation of foreclosure, advised plaintiff of the right to bring her account in good standing by paying all past due payments plus costs, that plaintiff made a demand for a reinstatement quote but defendants had intentionally provided the wrong

11

fax number and failed to transmit the quote timely to prevent plaintiff from submitting the demand timely, and that plaintiff was ready, willing and able to transmit the funds to Rama but were prevented from doing so by defendants, and were thereby excused from tendering the funds.

Clearly, plaintiff's allegations do not state a cause of action for wrongful foreclosure because, among other things, plaintiff was in breach of the settlement agreement by failing to timely make installment payments as a condition precedent to postponing the foreclosure. Further, plaintiff had agreed that in the event of default, the foreclosure would not be contested. Nor did plaintiff show the sale was illegal, fraudulent, or willfully oppressive.

Finally, where a foreclosure sale has been completed, a debtor must allege tender of the amount of the secured debt. (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, citing *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.) Having had two opportunities to amend the cause of action, the trial court was justified in dismissing it without leave to amend.

2. *Cause of Action for Breach of Contract, Covenant of Good Faith, Fair Dealing.*

The SAC purported to state a claim for breach of contract. In that claim, plaintiff alleged she executed a deed of trust in favor of Athas which was then assigned to Rama, that Rama breached the clauses of the promissory note pertaining to the interest rate and

12

charges, that property taxes were to be collected in installments pursuant to the settlement agreement to which Rama was bound, that Rama failed to pay property taxes respecting the property, and that defendant's breached their contractual obligations by failing to provide plaintiffs with a reinstatement quote.

"'"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" (*Shusha, Inc. v. Century-National Ins. Co.* (Dec. 14, 2022, No. B313907) 87 Cal.App.5th 250, 266, quoting *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 108.)

Plaintiff failed to allege (a) that the contract required Rama to provide plaintiff with a reinstatement quote, or (b) that Plaintiff made a beneficiary payoff demand (she made a demand for a reinstatement quote, after alleging that "[w]ithout a beneficiary payoff demand, the refinance transaction was not able to be completed"; (c) that Rama failed to pay the real estate taxes,[5] or (d) that Rama's alleged breach damaged plaintiff. The trial court properly sustained the breach of contract claim without leave to amend. More importantly, plaintiff's complaint fails to allege that she or her predecessors in interest had performed their obligations under either of the contracts mentioned or that their performance was excused. Plaintiff alleged only that she made a demand for a

---

[5] Along with the demurrer, Rama requested that the court take judicial notice of the tax collector's confirmation that real estate taxes were current. This information contradicts the allegations of the complaint.

reinstatement quote and that without a beneficiary payoff demand, the refinance transaction could not be completed.

Unfortunately, the settlement agreement (which appears to be the focus of this cause of action) does not contain any provisions granting plaintiff the right to demand a beneficiary payoff amount or a reinstatement quote. By its plain language, it provides only that foreclosure would be postponed if plaintiff and her predecessors in interest or principals were current in making four consecutive installment payments, and that if any payment were late or unpaid, foreclosure would promptly proceed. Further, even if Rama had not paid the real estate taxes, plaintiff has failed to allege how she was damaged.

Plaintiff failed to allege a cause of action for breach of contract after two attempts. The order dismissing it without leave to amend was proper.

3. *The Cause of Action for Quiet Title.*

Plaintiff's third cause of action alleges that her quiet title claim is based on her allegations that Rama did not have legal authority to foreclose on the property, that the notice of default and notice of trustee's sale contained amounts that were fraudulent, and that any notices and deeds issued by TD Specialists were illegal and ineffective, requiring title to be quieted in the name of Brookville or Frye.

Pursuant to Code of Civil Procedure, section 761.020, a cause of action for quiet title must include all of the following: "(a) A description of the property that is the subject of the action . . . .

14

(b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title . . . .

(c) The adverse claims to the title of the plaintiff against which a determination is sought.

(d) The date as of which the determination is sought . . . .

(e) A prayer for the determination of the title of the plaintiff against the adverse claims."

A key element of a quiet title claim "'is "[t]he adverse claims to the title of the plaintiff against which a determination is sought." [Citation.]'" (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 220, quoting *West v. JPMorgan Chase Bank, N.A*. (2013) 214 Cal.App.4th 780, 802.) In *West,* the court explained that after a foreclosure sale, the lender has no adverse claim to title.

Here, plaintiff alleges only that TD Specialists issued an illegal and ineffectual deed. Neither TD Specialists, nor the original trustee under the deed of trust has any claim to title. Rama is the sole party with a claim to title, and judicial notice of the recorded deed in favor of Rama adequately established Rama's claim to title. Plaintiff has not proffered any allegation in her complaint, nor evidence to support her claim to title. In her opening brief, plaintiff offers no legal theory by which she may claim title to the property. Dismissal of the quiet title cause of action without leave to amend was proper.

## B.     *Challenge to the Denial of the Motion to Consolidate Actions.*

Plaintiff argues the trial court committed prejudicial error by refusing to consolidate the wrongful foreclosure case with the unlawful detainer case. She also argues that the ex parte applications were proper. We disagree.

First, we note that plaintiff discusses the standards for making ex parte motions in general. Plaintiff filed her original wrongful foreclosure complaint in October 2020; the unlawful detainer action was filed and served on plaintiff in July 2021, plaintiff had ample time to file a noticed motion to consolidate prior to the trial in the unlawful detainer action, which took place on August 25, 2021. Instead, plaintiff filed back-to-back ex parte motions to consolidate.[6] Of course this would not guarantee that consolidation would be ordered, and it would not have provided the relief that plaintiff really needed, which was to delay the unlawful detainer action. We proceed with the merits of the claim.

### a.     *The Trial Court Properly Denied the Ex parte Motions.*

California Rules of Court, rule 3.1202, provides in pertinent part, "An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (Cal. Rules Ct., rule 3.1202 (c).) A court will not grant ex parte relief "'in any but the plainest and most certain of cases.'"

---

[6] Plaintiff's brief also refers to the standard of review for denials of continuances, but no motion to continue was filed in the present case.

(*People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257, quoting

*Consolidated Const. Co. v. Pacific E. Ry. Co.* (1920) 184 Cal. 244, 246.)

Case law does not define "irreparable injury." In *Nakamura v. Parker* (2007) 156

Cal.App.4th 327, the reviewing court reversed the denial of an ex parte application for a

domestic violence restraining order where the petitioner alleged facts based on personal

knowledge showing past acts and more recent and recurring acts showing that her

husband intentionally or recklessly caused or attempted to cause her bodily injury and

placed her in reasonable apprehension of imminent serious bodily injury, including

"striking," "stalking," "threatening," "sexually assaulting," "harassing," "annoying

telephone calls," and "destroying personal property." (*Id.,* at p. 337.) The reviewing

court held that these allegations demonstrated a substantial risk that "great or irreparable

injury" would be the result to her before the matter can be heard on notice. (*Ibid.*) This

suggests that the "irreparable injury" to which the court rule applies requires a showing of

something more than a potential financial or property loss; instead it refers to threats of

serious bodily injury to the person which would establish the need for warrant emergency

relief without a noticed motion.

Plaintiff's papers in support of the ex parte motion asserted that denial of the

emergency application would allow the unlawful detainer action to proceed before the

wrongful foreclosure action could be litigated and could result in inconsistent judgments.

These averments do not constitute "irreparable harm, immediate danger, or any other

statutory basis for granting relief ex parte." Plaintiff was not exposed to risk of

17

irreparable harm or immediate danger by the pendency of the unlawful detainer action, although she would certainly face economic loss. But the court gave plaintiff an opportunity to bring a noticed motion.

Instead of following that suggestion, plaintiff filed a second ex parte application for an order consolidating the matters, which was denied for the same reason: no emergency. Plaintiff also filed an ex parte application in the wrongful foreclosure action to enjoin the unlawful detainer action, which also was denied. It was not until September 1, 2021, that plaintiff filed a noticed motion to consolidate the cases "for oral argument." However, by that time the unlawful detainer trial had concluded. (E077654, *Rama Fund v. Frye, et al*., [Feb. 15, 2023, nonpub. opn.].) The motion to consolidate was therefore denied as factually unwarranted and untimely.

The trial court's denials of the ex parte applications were justified: plaintiff may have been exposed to financial complications but there was no showing of irreparable harm or injury, especially considering the merits of the motion to consolidate, to which we now turn.

b.      *Consolidation Was Not Warranted.*

Code of Civil Procedure section 1048, subdivision (a) provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." "Consolidation of cases under Code of Civil

Procedure, section 1048, rests within the sound discretion of the trial judge." (*Walker v. Walker* (1960) 177 Cal.App.2d 89, 91-92, citing *Fisher v. Nash Bldg. Co*. (1952) 113 Cal.App.2d 397, 402 ; *Fellner v. Steinbaum* (1955) 132 Cal.App.2d 509, 511.) "The discretion granted to the court must necessarily be broad and will not be interfered with on appeal, except for an abuse thereof." (*National Electric Supply Co. v. Mt. Diablo Unified School Dist.* (1960) 187 Cal.App.2d 418, 421, and cases there cited.)

In the present case, plaintiff concedes that title cannot be tried in an unlawful detainer action, citing (*Malkoskie v. Option One Mortgage Corp*. (2010) 188 Cal.App.4th 968, 973, and *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255.) "[O]nly claims bearing directly upon the right of immediate possession are cognizable." (*Vella v. Hudgins, supra*, at p. 255.)

Consequently, a judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title (*Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160; *Byrne v. Baker* (1963) 221 Cal.App.2d 1, 5-6; *Bekins v. Trull* (1924) 69 Cal.App. 40, 45), or to adjudicate other legal and equitable claims between the parties. (*Gonzales v. Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029; *Union Oil Co. v. Chandler* (1970) 4 Cal.App.3d 716 [disapproved on a different point in *Green v. Superior Court of San Francisco* (1974) 10 Cal.3d 616, 633, fn. 19.); *Haase v. Lamia* (1964) 229 Cal.App.2d 654, 658; *Patapoff v. Reliable Escrow Service Corp*. (1962) 201 Cal.App.2d 484.)

Thus, matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in an unlawful detainer summary proceeding for possession nor are they concluded by a judgment in such an action. (*Gonzales v. Gem Properties, Inc., supra*, 37 Cal.App.3d at p. 1035, citing *Cheney v. Trauzettel*, *supra*, 9 Cal.2d 158, 160.)

Plaintiff's expressed reason for seeking consolidation was to prevent inconsistent judgments, but that has not come to pass. Instead, the court properly found the unlawful detainer action and the wrongful foreclosure case were not factually warranted and the motion was untimely. These findings are supported by the record and reflect a proper exercise of judicial discretion.

### DISPOSITION

The judgment is affirmed. Respondent Rama is entitled to an award of costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.


We concur:

SLOUGH_____
J.

RAPHAEL_____
J.