Filed 3/10/23  Samjungcast Co. v. Expway Corp. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAMJUNGCAST CO., LTD., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> EXPWAY CORPORATION, <br><br> Defendant and Respondent. | H048862 <br> (Santa Clara County <br> Super. Ct. No. 19CV345248) |

Samjungcast Co., Ltd. (Samjungcast) first sued Expway Corporation (Expway) in New York, alleging contractual and tort claims arising out of the parties' business relationship in South Korea.  After the New York state court dismissed the action on forum non conveniens grounds, Samjungcast brought this action.  The trial court dismissed the case on Expway's demurrer, concluding that each cause of action was time-barred.  We uphold the trial court's determination with respect to the tort causes of action.  Because we read the operative complaint as stating a timely contractual claim under at least one legal theory, however, we reverse as to Samjungcast's first and fifth causes of action.

# I.    BACKGROUND[1]

Expway is a Delaware corporation headed by Claude Seyrat with offices in South Korea, France, Delaware, and California.  Expway provides broadcast multicasting service (BMS), a system that facilitates high-quality video streaming to large numbers of subscribers.  Moon-Ki Jeong is the director of Expway's South Korean offices.

Samjungcast is a South Korean business organization headed by Choong Woon Moon[2] and authorized to do business in California.

In 2014, Jeong told Moon that Expway, the only entity providing BMS, was looking for a distributor to cultivate business in Asia.  After "a series of meetings and discussions," the two reached "a verbal agreement for 'Expway's exclusive South Korea distributorship' with opportunity to develop other Asian markets."  The verbal agreement was "partially" reflected by a written agreement executed on December 10, 2014.  Notwithstanding the written agreement, the parties contemplated that "certain core issues would be [addressed] 'later.' "

The written agreement was a "Value Added Reseller Agreement" (VAR Agreement).[3]  Through the agreement, Expway granted "Reseller" Samjungcast "a non-exclusive right and license to distribute, market, resell to End-Users, maintain and support" specified software in South Korea, Samjungcast's assigned sales area.

---

[1] We take the facts from Samjungcast's operative first amended complaint (FAC) and materials the trial court judicially noticed in ruling on the demurrer.  (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).)

[2] Of the different ways Samjungcast spelled Moon's name in the operative FAC and its attachments, we adopt the spelling from the typewritten signature block of a contract Moon signed on Samjungcast's behalf.

[3] On its face, the VAR Agreement identifies Samjungcast and "Expway S.A." as the counterparties.  Expway has not contested Samjungcast's allegation that the contract binds the parties to this litigation.  To the contrary, Expway has asserted the written contract's existence as a defense to Samjungcast's oral contract claims.

Under the VAR Agreement, Samjungcast would pay Expway for its software and resell the software to third parties at prices approved by Expway. The VAR Agreement had a 12-month term, subject to a one-time automatic renewal for an additional 12 months. The VAR Agreement contained an integration clause: "The Agreement sets out the entire agreement between the Parties in relation to its subject matter. It supersedes all prior documents or agreements between the Parties and may only be modified by an instrument signed by the relevant Parties." The VAR Agreement also had a choice-of-law provision and a forum-selection clause: "This Agreement is subject to the laws of the State of California, United States. . . . [¶] In the event of a dispute between the Parties resulting from the interpretation, application and/or performance of this agreement, . . . exclusive jurisdiction shall be granted to the applicable courts of the State of California, United States, notwithstanding multiple defendants or third[-]party claims even for emergency proceedings and protective procedures."

Before the parties entered the contract, Jeong told Moon that Expway had three specific customers who were committed to signing contracts for licenses, and who would within three months provide a revenue stream for Samjungcast. At some point, Samjungcast learned that Jeong's representations conflicted with Expway's internal assessment that a South Korean reseller would need to spend approximately $500,000 to $1 million over two to four years before realizing a revenue stream.

At some point, Jeong told Moon that Expway would pay Samjungcast a commission of 20 to 30 percent of gross revenues for all South Korean accounts—including an account with Samsung Electronics that Expway had already developed—plus hourly fees for local customer servicing and support work. After the parties executed the VAR Agreement, through March 2015, Jeong continued to assure Moon that Samjungcast would take over the Samsung contract.

In December 2014, Samjungcast acquired an office, hired engineering and support staff, and began providing customer support to Samsung. When Expway did not pay

3

Samjungcast for servicing the Samsung account, Samjungcast repeatedly complained throughout 2015. Expway initially told Samjungcast that "such issues" would be addressed by Jeong, but by late 2015 and early 2016, Expway and Jeong began telling Samjungcast that they had " 'never promised' " the revenue shares Samjungcast claimed.

From January to March 2015, Jeong solicited a kickback agreement, telling Moon that Samjungcast had to " 'pay to play' "—that is, Samjungcast had to agree to pay Jeong, personally, sizable kickbacks from any Samjungcast revenue generated by Expway licenses. Samjungcast refused to do so. In retaliation, Jeong interfered with Samjungcast's efforts to sell licenses for Expway's software.

The three specific customers that Jeong had told Moon were committed to signing contracts for licenses never materialized. Samjungcast would later conclude that the claimed customers never existed. Samjungcast never succeeded in signing contracts with any new customers.

In mid-2015, Moon discovered that Jeong was using a Samjungcast corporate credit card for personal expenses, but Jeong refused to surrender the card for several months after Moon asked him to do so. Expway has refused to take action against Jeong for his use of Samjungcast's corporate credit card.

In November 2015, Samjungcast developed a lead with a potential customer. To secure the sale, Samjungcast requested demo software from Expway. Expway insisted on advance nonrefundable payment of $60,000 or 50,000 euros for the demo software, with the intention of diverting the customer away from Samjungcast so that Expway could unilaterally develop the account.

In December 2015, Samjungcast's chief engineer resigned after Samjungcast had invested significant effort training him, in particular to service Expway's Samsung account. Three weeks later, Expway hired the chief engineer. This enabled Expway to directly service the Samsung account without Samjungcast. Samjungcast, after

4

investigating, concluded that Expway conducted "industrial espionage" against it with the assistance of Samjungcast's chief engineer, while he was still employed by Samjungcast.

By February 2016, Moon was having difficulty contacting Expway:  Expway had instructed him to work through Jeong, but Jeong was avoiding him due to the credit card dispute.  That month, Moon wrote to Seyrat alleging that Expway had broken a contractual promise by failing to pay 20 to 30 percent of Samsung's license fee to Samjungcast and had improperly retained Samjungcast's chief engineer.

In April 2016, Moon provided Seyrat a more comprehensive written list of grievances, including Expway's alleged failure to pay invoices for Samjungcast's hourly services, Expway's alleged failure to pay appropriate commissions on the Samsung account, Jeong's alleged false promise of three customers, Jeong's alleged embezzlement of Samjungcast funds, Jeong's alleged successful effort to persuade a Samjungcast engineer to leave the company in favor of Expway, and other unspecified breaches of the implied covenant of good faith and fair dealing.  In the letter, Samjungcast asked Expway to agree to arbitrate the dispute.

On April 29, 2016, Samjungcast filed a complaint against Expway and Jeong in New York state court.  Samjungcast alleged in the complaint that Expway and Jeong induced it to enter a contract by falsely representing that there were three or four customers with impending contracts, breached a revenue-sharing agreement relating to the Samsung account, attempted to secure kickbacks through Jeong, diverted a potential client away from Samjungcast by insisting on a $60,000 fee for demo software, embezzled Samjungcast funds through Jeong's use of the corporate credit card, and tampered with Samjungcast's engineering staff to access Samjungcast's proprietary information.  Samjungcast alleged claims for fraud in the inducement, tortious interference with prospective advantage, tortious interference with business relations, prima facie tort, breach of the implied covenant of good faith and fair dealing, and breach of verbal agreement.

5

On November 17, 2016, the New York trial court dismissed Samjungcast's complaint on forum non conveniens grounds. Samjungcast appealed the order of dismissal, but the appellate court dismissed the appeal as untimely. On March 16, 2018, Expway served notice of the adverse appellate ruling on Samjungcast.

Samjungcast initiated the present action against Expway and Jeong on March 27, 2019. In the operative FAC, filed July 16, 2020, Samjungcast alleged causes of action for breach of contract, fraud in the inducement, tortious interference with prospective advantage, tortious interference with business relations, and breach of the covenant of good faith and fair dealing. The next month, Samjungcast voluntarily dismissed its claims against Jeong without prejudice.

Expway successfully demurred to the FAC. The trial court entered judgment in favor of Expway and against Samjungcast on January 25, 2021. Samjungcast timely appealed.

## II. DISCUSSION

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) In the exercise of our independent judgment, "we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova*, *supra*, 62 Cal.4th at p. 924.) "We are not limited to plaintiffs' theory of recovery or ' "form of action" ' pled in testing the sufficiency of the complaint." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870; *Gutierrez v. Carmax Auto Superstores Cal.* (2018) 19 Cal.App.5th 1234, 1244-1245 (*Gutierrez*).) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment[,]" but "[t]he burden of proving such

6

reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Where the basis for a demurrer is the statute of limitations, the untimeliness of the action " ' " ' "must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." ' " ' " (*Raja Development Co., Inc. v. Napa Sanitary Dist.* (2022) 85 Cal.App.5th 85,92; see also *Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 400.)

## A.    *Equitable Tolling*

Samjungcast argues that the applicable limitations periods should be equitably tolled from the date it initiated suit in New York through the dismissal of its unsuccessful appeal.[4]  The trial court concluded that equitable tolling did not apply.  For the reasons that follow, we agree with the result the trial court reached.

### 1.    *Legal Principles*

 "[E]quitable tolling . . . allows courts to exercise their inherent equitable powers to excuse parties' failure to comply with technical deadlines when justice so requires." (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 730 (*Saint Francis I*).)  Where applicable, the judicially created doctrine "will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).)  The doctrine emerged from three lines of cases affording relief

---

[4] Samjungcast also claims an ongoing entitlement to statutory tolling based on its assertion that Expway's being "based overseas or out of state" makes it "absent from the state" within the meaning of Code of Civil Procedure section 351.  But this claim is fatally undermined by Samjungcast's allegation that Expway—the only defendant implicated in this appeal—maintains an office in Sunnyvale, California, and the absence of any indication that Samjungcast could amend its complaint to allege this office did not exist at any relevant time.

from the statute of limitations (1) where "a plaintiff was already involved in one lawsuit, and filed a subsequent case that could lessen the damage or harm that would otherwise have to be remedied through a separate case"; (2) "where a plaintiff was required to pursue, and did indeed pursue, an administrative remedy before filing a civil action"; and (3) " ' "to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits." ' " (*Saint Francis I*, *supra*, 9 Cal.5th at p. 724.)  Equitable tolling stops the limitations period from running for the duration of the tolling event. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370-371.)  But "equitable tolling is a narrow remedy that applies to toll statutes of limitation only 'occasionally and in special situations.' " (*Saint Francis I*, *supra*, 9 Cal.5th at p. 724).)

To secure equitable tolling, a plaintiff must show "three elements:  'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' " (*McDonald*, *supra*, 45 Cal.4th at p. 102; *Saint Francis I*, *supra*, 9 Cal.5th at p. 717.)  Where the asserted basis for equitable tolling is the plaintiff's pursuit of an alternative remedy, the plaintiff's pursuit of that alternative must be both objectively reasonable and subjectively in good faith, whether or not the remedy sought was in fact viable.  (*Saint Francis I*, *supra*, 9 Cal.5th at pp. 728-730; *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2021) 59 Cal.App.5th 965, 979-980 (*Saint Francis II*).)  And "[w]here a claim is time-barred on its face, the plaintiff must specifically plead facts that would support equitable tolling." (*Long v. Forty Niners Football Co., LLC* (2019) 33 Cal.App.5th 550, 555; see also *Mitchell v. State Dept. of Public Health* (2016) 1 Cal.App.5th 1000, 1011; *Mojica v. 4311 Wilshire, LLC* (2005) 131 Cal.App.4th 1069, 1073-1074.)[5]

---

[5] We reject Expway's contention that *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427 (*Thomas*) supports substantial evidence review of the trial court's determination that equitable tolling does not apply. On appeal, the *Thomas* court was reviewing factual determinations the trial court made on an evidentiary record—competing declarations of counsel going to the reasonableness and good faith of the decision by plaintiff's counsel

8

## 2.    *Application*

The FAC and the complaint Samjungcast filed in New York turn on the same operative facts and put forward a closely similar set of substantive theories.  Accordingly, we assume that Samjungcast's New York complaint gave Expway notice of the claims that Samjungcast included in the FAC, allowing Expway to protect itself from prejudice by preparing its defense.  (See *McDonald*, *supra*, 45 Cal.4th at p. 102.)  But Samjungcast has neither supplied factual allegations supporting an inference that its decision to file in New York was reasonable nor identified additional facts that it would allege if given leave to do so.

The principal events giving rise to Samjungcast's claims occurred in South Korea, primarily between Moon and Jeong.  Samjungcast is a South Korean business entity authorized to do business in California.  Expway is a corporation with a footprint on at least three continents and its principal offices in California, Delaware, and France.  The VAR Agreement was, by its plain terms, "subject to the laws of the State of California" and required the parties to submit disputes "resulting from the interpretation, application and/or performance of [that] agreement" to the exclusive jurisdiction of California state courts.

The only reason the record discloses for Samjungcast's decision to bring suit in New York, as opposed to any other forum, is that Expway has done "extensive[]" business in New York and Samjungcast is also licensed to do business there.  But jurisdiction aside, Samjungcast's New York suit was dismissed on the ground that New York was an unsuitable forum.  New York courts "are not required to add to their financial and administrative burdens by entertaining litigation which does not have any

---

to dismiss and refile plaintiff's complaint—rather than the allegations of the pleadings or judicially noticeable facts; substantial evidence review was therefore warranted.  (*Id*. at pp. 433-437.)  Here, we review only the sufficiency of Samjungcast's allegations.  We do so de novo.

9

connection with th[e] State." (*Islamic Republic of Iran v. Pahlavi* (1984) 62 N.Y.2d 474, 478 (*Islamic Republic*).)  New York courts may stay or dismiss actions that "would be better adjudicated elsewhere," considering factors including "the burden on New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit [citations].  The court may also consider that both parties to the action are nonresidents [citation] and that the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction [citation]." (*Id*. at p. 479.)

Neither in the trial court nor on appeal has Samjungcast articulated a theory by which it might reasonably have believed that New York was a proper forum for its claims.  The operative pleading certainly reflects no connection between Expway's New York business and the present dispute.  As the New York trial court explained— according to the transcript Samjungcast appended to its FAC—Samjungcast even in responding to the forum non conveniens motion "failed to allege . . . that New York was a residency of any of the parties, that any witnesses to th[e] action [we]re in New York, . . . that any of the events in the Complaint occurred in New York, or that defendants['] agents were in New York when they negotiated the agreement."

Even considering the "flexibility" of the forum non conveniens doctrine (*Islamic Republic*, *supra*, 478 N.Y.2d at p. 479) and mindful of the liberal application of the equitable tolling doctrine where notice of the claims has been timely provided (*McDonald*, *supra*, 45 Cal.4th at p. 102), Samjungcast has not identified facts disclosing any connection between New York and the present lawsuit from which a represented party could reasonably believe that a New York court would accept the burden of managing the litigation between parties who had agreed to be bound by California law in California courts.  (See *Saint Francis II*, *supra*, 59 Cal.App.5th at p. 977 [requiring that represented party's counsel act reasonably and in good faith].)  Thus, we are unable to

10

infer from the demurrer record that Samjungcast's decision to pursue relief from the New York courts was objectively reasonable. Equitable tolling is not available.

We accordingly evaluate Samjungcast's various causes of action and whether the allegations pleaded are sufficient to state, under "any legal theory," claims not barred by the running of the applicable limitations period.

## B. *Contractual Causes of Action*

In its first cause of action, Samjungcast alleged that Expway breached its contractual obligations, including obligations under oral contracts, written contracts, implied contracts, and the "duty" of good faith and fair dealing. In its fifth cause of action, Samjungcast alleged that Expway breached the "covenant" of good faith and fair dealing. Reasoning that the contractual theories depended on oral contracts, the trial court ruled that both causes of action were subject to a two-year statute of limitations and, consequently, untimely. Liberally construed, however, the allegations supporting the first and fifth causes of action disclose an implied covenant theory based on a written contract, which is timely pursuant to a four-year statute of limitations.

### 1. *Legal Principles*

An express contract may be oral or written. (See generally *Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 888-889.) "To state a cause of action for breach of contract, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach and resulting damage." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.) In an action based on a written contract, a plaintiff may plead the legal effect of the contract, plead its precise language, or attach a copy of the contract to the complaint to be incorporated by reference. (See *Construction Protective Servs., Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198-199 (*Construction*); *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 401-402 (*Miles*).)

11

Under California law, every contract includes an implied covenant of good faith and fair dealing.  (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371.)  The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349, italics omitted.)  "[A] breach of the implied covenant is necessarily a breach of contract." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885, fn. omitted.)

The statute of limitations for a contractual implied covenant claim based on a written contract is four years.  (§ 337;[6] *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 471-472 (*Archdale*); *Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1309, fn. 7.)  The statute of limitations for a claim based on an oral contract and a tort implied covenant claim is two years.  (See § 339; *Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120; *Mullins v. Rockwell Internat. Corp.* (1997) 15 Cal.4th 731, 736; *Archdale*, *supra*, 154 Cal.App.4th at pp. 472-473.)  "A cause of action for breach of contract does not accrue before the time of breach." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 488 (*Romano*).)

### 2.     *Written Contract—Implied Covenant[7]*

Samjungcast alleged that Expway breached the implied covenant of good faith and fair dealing by frustrating Samjungcast's expectation of revenue and profit from their

---

[6] Undesignated statutory references are to the Code of Civil Procedure.

[7] Because this theory is sufficient to support each cause of action, we need not address whether Samjungcast has articulated a timely oral contract theory based on the same course of conduct.  (See, generally, *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 [demurrer must dispose of entire cause of action to be sustained]; *People ex rel. State Farm Mutual Automobile Ins. Co. v. Rubin* (2021) 72 Cal.App.5th 753, 779; *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1047.)

bargain. The trial court, in disposing of any theory of liability based on a written contract, reasoned that the references in the FAC to the written contract constituted a sham pleading intended to evade the limitations bar and that Samjungcast had not identified a specific breach of the written agreement or explained why it had failed to articulate in its initial complaint a theory based on the written agreement. The "sham pleading doctrine" precludes plaintiffs from amending complaints to omit harmful allegations and permits courts to disregard factual allegations in an amended complaint that are inconsistent with factual allegations in a prior complaint. (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343-344.) But while Samjungcast in the FAC may have articulated a different legal theory of recovery, it neither proffered factual allegations inconsistent with those in its prior complaint nor omitted harmful allegations. We are accordingly bound to consider Samjungcast's claim that Expway breached the written agreement between the parties, based on the facts that were properly alleged. (See *Gutierrez*, *supra*, 19 Cal.App.5th at p. 1244; *Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 876-877.)

It is true that, in pleading the first and fifth causes of action, Samjungcast did not specify the alleged conduct it contends violated the implied covenant; it instead incorporated by reference all of its factual allegations. Nevertheless, because the trial court sustained Expway's general demurrer, we must independently determine whether the operative complaint contains sufficient facts to constitute a cause of action pursuant to any legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 ["it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory"]; *Gutierrez*, *supra*, 19 Cal.App.5th at pp. 1244-1245; see also *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 566 [distinguishing " 'general demurrer' " challenging legal sufficiency of allegations from " 'special demurrer' " challenging form in which claims were brought]; *PGA West Residential Assn., Inc. v.*

13

*Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 176.) For the reasons that follow, we conclude that it does.

First, Samjungcast identified a written contract between the parties—the VAR Agreement—which it attached to the FAC. The VAR Agreement contemplated the parties would mutually benefit: Samjungcast would assist Expway in expanding the South Korean market for Expway's software, and Samjungcast would reap a share of revenues realized from its efforts.

Second, Samjungcast alleged that Expway frustrated Samjungcast's ability to make sales by charging Samjungcast an excessive price for demo software customarily available for at most a nominal fee. The contract expressly contemplated that Samjungcast would be able to "conduct[] demonstrations of the Software" to solicit sales. Expway's alleged refusal to provide demo software except at a prohibitive price, for the purpose of poaching Samjungcast's prospective customer, would violate the covenant of good faith and fair dealing implied in the written contract by defeating Samjungcast's ability to realize its bargained-for benefit.[8]

In its supplemental brief, Expway argues that it did not breach the implied covenant by charging for demo software because it did nothing more than exercise its express contractual rights. (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 554 [implied covenant does not " 'prohibit a party from doing that which is expressly permitted by the agreement itself' "].) Expway points out that the VAR Agreement has contractual terms that allow it to charge Samjungcast for "Software"—defined to mean "EXPWAY's computer-programming code in machine-readable form, as described in Attachment A, delivered with its Documentation, including enhancements, adaptations, derivative works, Updates and Upgrades." We

_____

[8] Although Expway reserved the right to sell its software directly within Samjungcast's sales area, Samjungcast has alleged interference, not merely competition.

14

assume for present purposes that the demo software at issue here satisfied the definition of Software, such that Expway was contractually entitled to charge Samjungcast for its use. But the wrong alleged by Samjungcast is Expway's insistence upon a prohibitive price, rather than its setting the price in good faith. Nothing in the contract, at least as presented in the trial court, permitted Expway to insist upon a prohibitive price.

Expway contends that, for statute of limitations purposes, the implied covenant claim should be considered only as a tort and not a contract claim because Samjungcast did not articulate how charging it for the demo software interfered with its ability to secure a benefit under the VAR Agreement. But Samjungcast alleged that Expway prevented it from selling the software to third parties by effectively withholding access to demo software and by then supplanting Samjungcast and selling directly to third parties. The point of entering a reseller agreement being to sell software to third parties, Samjungcast's allegations, if true, go directly to the contractual benefit for which it bargained.

In our focus on the pleadings, we express no opinion as to whether Samjungcast can prove its allegation that the price charged was prohibitive or otherwise violative of the implied covenant. To the extent that Expway argues that Attachment B to the VAR Agreement would show that the allegedly prohibitive price itself was expressly authorized by the contract, Attachment B is not part of the record that was presented to the trial court.[9] Accordingly, we are not in a position, reviewing the trial court's order sustaining Expway's demurrer, to assess whether Attachment B disproves Samjungcast's theory that Expway breached the covenant of good faith and fair dealing implied in the

---

[9] In the trial court, acknowledging that Samjungcast had "attache[d] the VAR Agreement to its Amended Complaint," Expway neither argued that Samjungcast failed to adequately allege the terms of the VAR Agreement nor submitted the attachments to the VAR Agreement. (See *Miles*, *supra*, 236 Cal.App.4th at pp. 401-402; *Construction*, *supra*, 29 Cal.4th at pp. 198-199.)

15

VAR Agreement by charging an excessive price for demo software. (See *Yvanova*, *supra*, 62 Cal.4th at p. 924 [considering the truth of material facts properly pleaded in the complaint and matters subject to judicial notice]; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [reviewing " 'the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration' "].) Samjungcast identified only one written contract, alleged that everything Expway had done breached the written contract and the implied covenant, and alleged that Expway frustrated its ability to sell software to at least one third party by insisting on a prohibitive price for demo software. It is reasonable to read the FAC as alleging that Expway through that conduct breached the written contract and the implied covenant.

On the facts alleged, Expway breached the covenant of good faith and fair dealing implied in the VAR Agreement less than four years before the present action was filed.[10] Expway relies on the date on which Samjungcast filed its original complaint for statute of limitations purposes, implicitly conceding that the FAC relates back to the original complaint. Its concession is well taken: "An amended complaint relates back to a timely filed original complaint . . . if it rests on the same general set of facts and refers to the same ' "offending instrumentalities" ' as the original complaint." (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 887; see also *Barrington v. A.H. Robins Co.* (1985) 39 Cal.3d 146, 151.) Although Samjungcast, in amending its complaint, restyled its oral contract claim as a more general contract claim, it appears

_____

[10] Samjungcast points in its briefing to another theory of breach—that Expway, through Jeong, breached the implied covenant by insisting that Samjungcast " 'pay to play' " by giving Jeong kickbacks from its revenues. Samjungcast appears to base this theory on the " 'three existing customers' " ready to sign with Samjungcast whom Jeong failed to refer because Samjungcast refused to " 'pay to play.' " Because this theory conflicts with Samjungcast's allegation that there were no such customers, we do not rely on it. (See *McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206-1207 ["[a] plaintiff may not avoid demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint' "].)

16

from the record that the original California complaint identified the written contract between the parties and included an implied covenant cause of action. Accordingly, the breach of covenant theory supports a timely cause of action for breach of contract predicated on a written agreement. (See *Romano*, *supra*, 14 Cal.4th at p. 488.)

## C. *Fraud*

### 1. *Legal Principles*

" 'The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations.] Fraud in the inducement is a subset of the tort of fraud. It "occurs when ' "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." ' " ' " (*Dhital v. Nissan North America, Inc.* (2022) 84 Cal.App.5th 828 (*Dhital*).)

"The limitations period for a fraud cause of action is three years from accrual." (*Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1430; § 338, subd. (d).) "The cause of action is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (§ 338, subd. (d).) But "to rely on the discovery rule to delay accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 (*Fox*).) The plaintiff's allegations must " 'show diligence;' 'conclusory allegations will not withstand demurrer.' " (*Ibid.*)

### 2. *Application*

Samjungcast alleged that at least two of Jeong's affirmative representations were knowingly false: (1) Samjungcast would be stepping into a " 'pre-fabricated' " business

17

that would begin generating licensing revenue within three months of start-up because there were three clients ready to sign formal contracts; and (2) Samsung, due to a language barrier, could not be adequately serviced by Expway. Samjungcast alleged that it was "induced . . . to rely on these false statements" by setting up and operating a business that suffered financial losses.[11] Taking these allegations together, we infer that Samjungcast's detrimental reliance on the alleged false representations included its entering the VAR Agreement in December 2014, at which time all elements of Samjungcast's fraud claim were present.

Samjungcast did not initiate this action until more than four years after all elements of its claim were present. It has neither pled sufficient facts to invoke the discovery rule—and thereby delay accrual to at least March 27, 2016, three years before the filing of this action—nor shown that it could plead such facts if given leave to amend.

To the extent Samjungcast's theory depends on the false representation that three new clients were ready and waiting to sign contracts upon its execution of the VAR Agreement, such that it would secure a revenue stream from those clients within the ensuing three months, the failure of such revenue streams to timely materialize would have been clear by April 2015. Samjungcast alleged that it was in March or April 2015 that "defendants 'clarified' " that the terms of the "original business arrangement," including "contracting with the three impending licenses," were contingent on Samjungcast's willingness to give Jeong kickbacks, which Samjungcast refused to do.

To the extent Samjungcast's theory rests on false representations regarding Expway's ability to service Samsung, Samjungcast alleges that Moon "learn[ed] in early 2016" that Expway had been neglecting Samsung because it lacked personnel altogether,

---

[11] Given this allegation, notwithstanding the nomenclature in the complaint, we understand Samjungcast to be articulating a general fraud claim for damages, rather than merely a fraud in the inducement claim to set aside a contract. (See *Dhital*, *supra*, 84 Cal.App.5th at p. 723.)

18

not because of a language barrier, as Samsung's personnel were fluent in English and French. This conclusory allegation is insufficient to delay accrual of Samjungcast's fraud claim. (See *Fox*, *supra*, 35 Cal.4th at p. 808.)

To the extent the fraud claim may encompass other theories based on representations made over the course of the business relationship about prospective revenue-sharing intended to encourage Samjungcast to continue investing resources in support of Expway's business, the FAC discloses insufficient facts to underpin any such theory with specificity, and Samjungcast has given no indication that it could plead a timely theory given leave to amend.

Notably, Samjungcast quotes a February 2016 communication Moon wrote to Seyrat, more than one year after the parties entered the VAR Agreement yet more than three years before the present suit was filed, asserting that Samjungcast's protected "revenue stream of at least 20%, and likely 30%, appears to be based upon distorted assumptions that were not correctly provided to us at the outset." In that communication, Moon asked Expway to share revenues from the Samsung contract because that was the only existing revenue stream. While the complaint details the subsequent correspondence, ending with the filing of the New York action in April 2016, Samjungcast does not identify any subsequent offer to make the Samsung revenue stream available to it or to create any new revenue stream.

Accordingly, we see no reasonable possibility that Samjungcast would be able to plead a fraud claim that accrued on or after March 27, 2016, as Samjungcast was harmed by any fraudulent statements prior to that date and there is no indication that Samjungcast can allege facts to support delayed discovery after that date.

**D.** *Tortious Interference with Business Relations*

Because Samjungcast alleges that Expway "intended to" interfere with its business relations, we focus on the "intentional" version of the tort. "Intentional interference with prospective economic advantage has five elements: (1) the existence, between the

19

plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512; see also *Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 844, fn. 5.)  Samjungcast's tortious interference claim is barred by the applicable two-year limitations period.  (See § 339; *Augusta v. United Service Automobile Assn.* (1993) 13 Cal.App.4th 4, 10.)

Samjungcast alleged that Expway interfered with its business relations with third parties in two ways:  (1) refusing to transfer the Samsung account to Samjungcast; and (2) refusing to provide Samjungcast with demo software for prospective clients.  Under either theory, the interference tort was necessarily complete with all of its elements by April 2016, if not sooner—more than two years before Samjungcast initiated this action.  This is because both theories depend on Samjungcast acting as a reseller of Expway's software, but, by April 2016, the business relationship between Samjungcast and Expway had broken down.

Given the unavailability of equitable tolling as stated above, we affirm the trial court's determination that the fourth cause of action is barred by the statute of limitations.

### III.    DISPOSITION

We reverse the judgment of dismissal.  The matter is remanded with directions to the court to vacate its order sustaining Expway's demurrer to the FAC and to enter a new order (1) sustaining the demurrer to the second and fourth causes of action without leave to amend; and (2) overruling the demurrer to the first and fifth causes of action.  The parties shall bear their own costs on appeal in the interest of justice.

20

_____

LIE, J.

WE CONCUR:


_____

GREENWOOD, P.J.



_____

GROVER, J.




*Samjungcast Co., Ltd. v. Expway Corporation*
H048862